465 A.2d 1301

**COMMONWEALTH of Pennsylvania**

v.

**Richard KELLY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1983.

Filed Sept. 23, 1983.

Petition for Allowance of Appeal Denied Feb. 1, 1984.

Stuart M. Wilder, Assistant Public Defender, Doylestown, for appellant.

Michael J. Kane, District Attorney, Doylestown, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

Appellant was charged with 1) kidnapping[1], 2) felonious restraint[2], 3) simple assault[3], 4) aggravated assault[4], 5) indecent assault[5], 6) involuntary deviate sexual inter-

1. 18 Pa.C.S.A. § 2901.

2. 18 Pa.C.S.A. § 2902.

3. 18 Pa.C.S.A. § 2701.

4. 18 Pa.C.S.A. § 2702.

5. 18 Pa.C.S.A. § 3126.

course [6], 7) indecent exposure [7], 8) rape [8], and 9) recklessly endangering another person [9]. A jury convicted appellant of all the charges on October 28, 1980. Subsequently, appellant filed timely post-verdict motions. These motions were denied with the exception of appellant's Motion in Arrest of Judgment as to the aggravated assault conviction which was granted. Appellant was sentenced to a period of incarceration of not less than seven (7) nor more than twenty (20) years on each offense, each period to run concurrently with all others.

Appellant raises three (3) issues on appeal: 1) whether the Commonwealth proved that the court had jurisdiction to try the offenses of rape, involuntary deviate sexual intercourse, indecent exposure, and indecent assault; 2) whether the assistant district attorney's closing argument denied the appellant a fair trial; and 3) whether the court erred in its charge to the jury on jurisdiction.

The facts of the case are as follows:

On November 22, 1979, at approximately 11:00 p.m., the sixteen (16) year old victim, an employee of the Beehive Restaurant, attended a social gathering at the home of a co-worker, Ann White. Appellant, also a co-worker, arrived at the gathering at approximately 1:30 a.m.

At approximately 2:00 a.m., the victim requested that appellant drive her home and he agreed. Shortly after leaving the White residence, appellant pulled out a gun, locked the passenger door, pointed the gun at the victim's head and ordered her to the floor of his car. Appellant then drove fifteen (15) or twenty (20) minutes and stopped in a wooded area, unfamiliar to the victim.

Appellant then slapped the victim, told her to remove her clothing, and forced her to perform oral sex. The gun was

6.  18 Pa.C.S.A. § 3123.

7.  18 Pa.C.S.A. § 3127.

8.  18 Pa.C.S.A. § 3121.

9.  18 Pa.C.S.A. § 2705.

pointed at the victim's head during the incident. At one point, both the appellant and the victim left the car to relieve themselves. While outside the car, the appellant, who still had the gun pointed at the victim, showed her magazines depicting oral sex and told her to imitate the poses. Appellant also threatened to break her finger if she failed to cooperate.

Appellant continued to force the victim to have oral sex for the remainder of the night. At daybreak, he ordered her to get dressed; he then drove a few yards to an abandoned building. Inside the building, the appellant again showed the victim the magazine. At this point, sounds resembling gunshots were heard and the appellant told the victim to get back into the car. She was told to lie back in the reclining seat so she was unable to see where the appellant was driving.

Appellant drove around for a period in excess of an hour, eventually stopping in a cornfield. Appellant then forced the victim to again perform oral sex. The victim began crying and requested that she be permitted to go home. Appellant then emptied the bullets out of the gun, placed it in the back of the car and drove to a convenience store. While pulling into the store's parking lot, the appellant was involved in a traffic accident. Appellant instructed the victim not to tell anyone of the incident. Following the accident, he permitted her to call her parents. Her parents, who had contacted the police regarding the victim's disappearance, arrived with the police in response to the victim's call. Appellant was then arrested.

■ Regarding appellant's first issue, appellant asserts that the Commonwealth did not prove that the lower court had jurisdiction to try the offenses of rape, involuntary deviate sexual intercourse, indecent exposure, and indecent assault. Appellant specifically contends that even if The Journey Act, 19 P.S. § 525, is applicable, the specific facts of the case render it inapplicable. First, we will consider whether The Journey Act is still in effect in Pennsylvania.

The Journey Act, 19 P.S. § 525 (1964), provides in relevant part:

"In order to obviate the difficulty of proof as to offenses committed during journeys from place to place, in any indictment for felony or misdemeanor committed on any person or on any property upon any stage coach, wagon, railway car or other such carriage whatever employed in any journey, it shall be sufficient to allege that such felony or misdemeanor was committed within any county or place through any part whereof such coach, wagon, cart, car or other carriage shall have passed in the course of the journey during which such felony or misdemeanor shall have been committed; ... and every such felony or misdemeanor .. shall and may inquired of, tried, determined and punished in the county or place within which the same shall be so alleged to have committed in the same manner as if it had actually been committed therein."

However, The Journey Act was repealed on June 27, 1980, under the authority of the Act of April 28, 1978, (known as The Judiciary Act Repealer Act), and replaced by 42 Pa.C.S.A. § 1722(a)(1). Section 1722, entitled, "Adoption of Administrative and Procedural Rule" of the Judiciary Act of 1976 does not address the question of jurisdiction over offenses committed during journeys. Therefore, we are presented with a situation in which no general rules have been prescribed with respect to a repealed statute.

In 42 Pa.C.S.A. § 20003(b), entitled "Cross Reference and Interpretation" under The Judiciary Act Repealer Act, the legislature expressly provides for the situation wherein there are no general rules with respect to a repealed statute, by prescribing that the practice and procedure under the repealed statute are to be continued in full force and effect as part of the common law of the Commonwealth until such rules are promulgated.[10]

10.  42 Pa.C.S.A. § 20003(b) states:
    "(b) Interpretation—The specific repeals effected by section 2 are intended to eliminate obsolete, unnecessary or suspended statutory

We are of the opinion that, pursuant to 42 Pa.C.S.A. § 20003(b), the practice and procedure under the repealed Journey Act continues as part of our common law and is applicable to the jurisdiction question in the present case.

We must now consider whether the facts of this case were sufficient under The Journey Act to confer jurisdiction in the lower court over the offenses of rape, involuntary deviate sexual intercourse, indecent exposure, and indecent assault.

The victim testified that she was kidnapped in Bucks County when appellant, shortly after she entered his car, pulled a handgun, locked the passenger door, and told the victim to "get down on the floor." Appellant then drove to a wooded area, approximately fifteen (15) to twenty (20) minutes away from the point of the abduction, and forced the victim to perform oral sex upon him in the car. Thus, the offenses of rape, involuntary deviate sexual intercourse, indecent exposure, and indecent assault were clearly within the purview of The Journey Act. *See Commonwealth v. Hainds,* 448 Pa. 67, 292 A.2d 337 (1972); *Commonwealth v. Ruby,* 240 Pa.Super. 377, 367 A.2d 1100 (1976); *Commonwealth v. Stefanowicz,* 133 Pa.Super. 501, 3 A.2d 22 (1938); *Commonwealth v. Brown,* 71 Pa.Super. 575 (1919).

Appellant next contends that the assistant district attorney engaged in prosecutorial misconduct in his closing

provisions. General rules promulgated pursuant to the Constitution of Pennsylvania and the Judicial Code in effect on the effective date of the repeal of a statute, shall prescribe and provide the practice and procedure with respect to the enforcement of any right, remedy or immunity where the practice and procedure had been governed by the repealed statute on the date of its repeal. If no such general rules are in effect with respect to the repealed statute on the effective date of its repeal, the practice and procedure provided in the repealed statute shall continue in full force and effect as part of the common law of the Commonwealth, until such general rules are promulgated. Nothing in this act is intended to revive any act heretofore supplied and repealed by later inconsistent legislation. The fact that this act specifically repeals part of an act shall not create any implication that the unrepealed parts of such act are consistent with or are not supplied by the applicable provisions of the Pennsylvania Consolidated Statutes or other later statutes."

argument on the basis of two (2) statements.  One state-
ment was as follows:

> "Ladies and gentlemen, a sixteen year old girl came to
> this courtroom and she told you what your common sense
> will tell you had to be the most humiliating testimony
> that she could ever be forced to tell you.  As a matter of
> fact, she wasn't forced to tell you, she came here and did
> it on her own and she told you what the events that
> occurred back in November of 1979 were.  Think about
> that when you're judging the credibility."

*    *    *    *    *    *

> "She didn't say it might have happened that way.  She
> said there was a gun and Mr. Kelly forced her to do it.
> How long did it go on?  It went on all evening, again,
> why ladies and gentlemen would someone make up a
> story in that much detail involving that much humiliation
> and coming and telling you that, putting themselves on
> the stand and subjecting themselves to that?  Your com-
> mon sense tells you, it tells you she was truthful and she
> was open and that when she said she was forced to go to
> the spot at gunpoint, that's what happened and no
> amount of cross-examination about how many drinks
> somebody how [sic: had] or how much time it took to get
> to a particular place is going to change that.  She identi-
> fied Mr. Kelly as the man who did this and she described
> the gun to you."

■  In general, a prosecutor is free to argue the reason-
able inferences supported by the record. *Commonwealth
v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976); *Common-
wealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976).
Also, it is clear that the prosecution may, in closing argu-
ment, attempt to meet the arguments made by defense
counsel in his summation. *Commonwealth v. Van Cliff*,
483 Pa. 576, 397 A.2d 1173 (1979).

■  In the present case, the remarks were in response to
defense counsel's statements, in his closing, which were

attempting to show that the victim's testimony was suspect and that "her account in this case might not be all that it seems to be." [11]

Therefore, we find no error.

Appellant's final contention of error concerns the following excerpt of the court's charge to the jury:

"Now, I am going to go into the offense which commonly are called sexual offenses, and that is the crime of indecent assault, involuntary deviate intercourse, indecent exposure and rape. With regard to those four offenses I will tell you that you cannot convict the defendant, Richard Kelly, of any fact that the Commonwealth has not proved beyond a reasonable doubt occurred in the Commonwealth. You may not speculate as to where these particular events occurred. You must find the defendant again proved beyond a reasonable doubt that the act occurred in Pennsylvania before you can find him guilty of the sexual offenses. I will tell you, however, that Bristol Township, Falls Township and Solebury Township are all in Bucks County, Pennsylvania."

The appellant specifically objects to the court's statement that "you must find the defendant again proved beyond a reasonable doubt that the act occurred in Pennsylvania before you can find him guilty of the sexual offenses."

■ Our Supreme Court has consistently held that, in reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). Error cannot be predicated upon isolated excerpts of the charge. It is the general effect of the charge that

11. The defense also argues it was prejudiced when the District Attorney twice referred to Miss Mohan's statements to the District Attorney's Office, and no official statements had ever been given. It is clear from the context of the closing argument that the prosecutor was merely referring to statements of the victim, and thus appellant's argument is meritless.

controls. *See Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972).

■ In the present case, immediately before the afore-mentioned error, the court stated: "Now, I am going to go into the offense which commonly are called sexual offenses, and that is the crime of indecent assault, involuntary deviate sexual intercourse, indecent exposure and rape. *With regard to those four offenses I will tell you that you cannot convict the defendant, Richard Kelly, of any fact that the Commonwealth has not proved beyond a reasonable doubt occurred in the Commonwealth."* (emphasis added). Throughout the twenty-one (21) page charge, there is but one misstatement (the one at issue here), and there are no less then twenty-five (25) direct statements regarding the Commonwealth's burden of proof including the one on jurisdiction immediately preceding this error.

Evaluating the charge as a whole, we hold that this isolated error was clearly harmless error. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

Judgment of sentence affirmed.

POPOVICH, J., files a concurring statement.

POPOVICH, Judge, concurring:

I join Judge Hester's recitation of the law and only wish to point out that the venue of a court of common pleas concerning matters over which it has jurisdiction "shall be as prescribed by general rule." 42 Pa.C.S.A. § 931(c). Instantly, since no "general rule" has been promulgated by our Supreme Court to fill the void created by the repeal of the Journey Act (19 P.S. § 525) by the Judiciary Act Repealer Act (JARA), it survives in this Commonwealth in the form of common law by virtue of Section 20003(b) of the JARA. 42 Pa.C.S.A. § 20003(b).