PHILOMENA NOBRIGA, individually and as Special Administratrix of the Estate of TRISTAN NOBRIGA, deceased, TRISTAN NOBRIGA, JR., THELMA SHARUM, BEVERLY MILLER, MARIETTA GOUVEIA, AUDREY NOBRIGA and JOHN NOBRIGA, Plaintiffs-Appellants, Cross-Appellees, *v.* RAYBESTOS-MANHATTAN, INC., a Connecticut corporation, Defendant-Appellee, and EAGLE-PICHER INDUSTRIES, INC., an Ohio corporation, Defendant-Appellee, Cross-Appellant, and JOHNS-MANVILLE SALES CORPORATION, formerly known as JOHNS-MANVILLE PRODUCTS CORPORATION, a Delaware corporation; also formerly known as JOHNS-MANVILLE CORPORATION, a New York corporation; FIBREBOARD CORPORATION, formerly known as FIBREBOARD PAPER PRODUCTS CORPORATION, a Delaware corporation; COMBUSTION ENGINEERING INC., a Delaware corporation; OWENS-CORNING FIBERGLAS CORPORATION, a Delaware corporation; UNARCO INDUSTRIES, INC., an Illinois corporation, formerly known as UNION ASBESTOS AND RUBBER COMPANY, a Delaware corporation; THE CELOTEX CORPORATION, a Delaware corporation, formerly known as PANACON CORPORATION, formerly known as BRIGGS MANUFACTURING COMPANY, and PHILIP CAREY CORPORATION, a Pennsylvania corporation; A C and S, a Delaware corporation, formerly

known as ARMSTRONG CONTRACTING AND SUPPLY CORPORATION; RUBEROID COMPANY, a Delaware corporation; FORTY-EIGHT INSULATIONS, INC., an Illinois corporation; NICOLET, INC., a Pennsylvania corporation; GAF CORPORATION, a Delaware corporation; SOUTHERN ASBESTOS COMPANY, a Delaware corporation; J.P. STEVENS, INC., a Delaware corporation; DELAWARE ASBESTOS AND RUBBER COMPANY, a Pennsylvania corporation; H.K. PORTER CO., INC., a Delaware corporation; AMATEX CORPORATION, a Pennsylvania corporation; KEENE CORPORATION, a Delaware corporation; ARMSTRONG CORK COMPANY, a Pennsylvania corporation; OWENS-ILLINOIS, INC., an Ohio corporation; CAREY CANADA, INC., a Canadian corporation, Successor-in-Business to CAREY CANADIAN MINES, LTD., a Canadian corporation; GARLOCK INC., a Pennsylvania corporation; ALOHA STATE SALES COMPANY, INC., a Hawaii corporation; DOE ONE THROUGH ONE HUNDRED, inclusive; Defendants (In Re Asbestos Cases: A.C.M. GALIHER 1 - Civil No. 55624)

NO. 9173

(CIVIL NO. 55624)

MAY 3, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY PADGETT, J.

This case involves an appeal and a cross-appeal from a judgment in favor of the plaintiffs-appellants and against defendants-appellees Raybestos-Manhattan, Inc. and Eagle-Picher Industries, Inc. Plaintiffs-appellants claim that the court below erred in the judgment in determining the amount of damages against the two appellees. Appellee/cross-appellant Eagle Picher Industries, Inc. cross-appeals, contending that the court below erred in the pretrial proceedings in striking its defense that it was immune from liability because the asbestos products it manufactured for subsequent use by the United States were manufactured in compliance with government specifications.

As to the order striking the defense, we affirm. As to the judgment, we reverse and remand.

Tristan Nobriga was an employee of the Pearl Harbor Naval Shipyard from 1941 to 1969. While working there he was exposed to asbestos products manufactured by the appellees and others. As a result of that exposure, he contracted malignant mesothelioma and eventually died. Prior to his death, he instituted the present action and, following his death, his estate, widow and children continued the suit as parties plaintiff. Some 24 manufacturers and suppliers of asbestos products were sued. Twenty-two settled pursuant to release forms complying with HRS § 663-15. On trial defendants-appellees Eagle-Picher and Raybestos-Manhattan were found to be 13% and 20% liable, respectively. The jury attributed

the remaining 67% of the liability among the various settling defendants in varying amounts from 0 to 39%. It also found that the total damages were $564,055.

Section 663-14, HRS, provides as follows:

*Release; effect on injured person's claim.* A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

The releases of the various settling defendants in this case followed the statute and provided for a reduction of the amount of the award by the amount paid for the release or by the releasee's allocated portion of liability, whichever was the greater.

We note that in sending the matter to the jury, both the theories of negligence and strict products liability were submitted and each party held liable by the jury was held liable on both theories in the same percentages.

The court below, in its "Decision Re Application of Settlement Proceeds and Jury Verdict under Chapter 663", devised the following table:

|  | SETTLEMENT | % LIABILITY | | GREATER |
|---|---|---|---|---|
| 1. Aloha State Sales | $ 7,000.00 | 0% | | $ 7,000.00 |
| 2. Amatex | 2,500.00 | 1% = $ | 5,640.55 | 5,640.55 |
| 3. Armstrong Cork | 4,000.00 | 0% | | 4,000.00 |
| 4. Carey Canada, Inc. | 1,000.00 | 0% | | 1,000.00 |
| 5. Celotex | 31,662.49 | 9% = | 50,764.95 | 50,764.95 |
| 6. Combustion Engineering | 25,425.00 | 0% | | 25,425.00 |
| 7. Delaware Asbestos | 500.00 | 0% | | 500.00 |
| 8. Eagle-Picher | | 13% | | |
| 9. Fibreboard | 39,920.82 | 4% = | 22,562.20 | 39,920.82 |
| 10. Forty Eight | 4,000.00 | 1% = | 5,640.55 | 5,640.55 |
| 11. GAF | 2,000.00 | 0% | | 2,000.00 |
| 12. Garlock | 6,000.00 | 0% | | 6,000.00 |
| 13. H. K. Porter | 25,000.00 | 2% = | 11,281.10 | 25,000.00 |
| 14. J. P. Stevens | 1.00 | 0% | | 1.00 |
| 15. Johns-Manville | 186,829.11 | 39% = | 219,981.45 | 219,981.45 |
| 16. Keene | 7,500.00 | 0% | | 7,500.00 |
| 17. Nicolet | 7,258.33 | 0% | | 7,258.33 |
| 18. Owens Corning | 92,035.63 | 3.5% = | 19,741.92 | 92,035.63 |
| 19. Owens Illinois | 2,500.00 | 3.5% = | 19,741.92 | 19,741.92 |
| 20. Pittsburgh Corning | 15,750.00 | 1% = | 5,640.55 | 15,750.00 |

| | | | | |
|---|---|---|---|---|
| 21. Raybestos Manhattan | | 20% | | |
| 22. Ruberoid | — | 1% = | 5,640.55 | 5,640.55 |
| 23. Southern | — | 0% | | — |
| 24. Unarco | 4,700.00 | 2% = | 11,281.10 | 11,281.10 |
| Total | $465,582.38 | | | $552,081.85 |

The court followed the literal wording of HRS § 663-14 and the releases and treated each settlement individually. It therefore reduced appellants' total verdict, in each case, by the dollar amount paid by the settlement or by the dollar amount reached by multiplying the amount of the verdict by the particular defendant's percentage of liability as determined by the jury, whichever was greater. The total amount of the deductions as the table reflects, was $552,081.85. Deducting this amount from the total verdict, it entered a judgment against the appellees in the total amount of $11,973.15, allocated $4,716.70 to Eagle-Picher and $7,256.45 to Raybestos-Manhattan.

We consider first the cross-appeal of Eagle-Picher from the order striking its defense of compliance with government specifications which it urges conferred an absolute immunity upon it.

Since cross-appellant was held liable in the same percentage on both the strict liability and negligence theories, we need not consider further whether the order was correct with respect to the negligence theory if we decide that it was correct with respect to the strict liability theory.

Moreover, despite cross-appellant's attempt to characterize the matter as a design defect in the government specifications, the case was presented to the jury on the theory that Tristan Nobriga contracted his fatal cancer from the inhalation of asbestos dust and fibers. The exposure to such dust and fibers was inherent in the use of the asbestos material in the product and not in the way the product was designed. We therefore have no need to consider the applicability of a defense of adherence to government specifications where the injury arises out of some defect in a government design.

The narrow issue before us is whether, under Hawaii law, the manufacturer may set up adherence to government specifications as a defense to strict liability in tort where the product manufactured is inherently dangerous because of a quality in the materials

specified for use. This case is one of first impression in this jurisdiction. While adherence to government specifications in such a situation might well be the basis of cross-claims, we have no hesitancy in rejecting cross-appellant's contention that it is an absolute defense to liability. Accordingly, we affirm the order cross-appealed from.

With respect to the appeal from the judgment, the plaintiffs-appellants complain that the total amount paid to them in the various settlements added to the amount of the judgment totals only $477,555.53 and that they thus will receive $86,499.47 less than the amount of the jury award. Moreover, they are not satisfied to receive the amount of the jury award but contend that the appellees should pay their full percentage of the amount of the jury award, 33% of $564,055 or $186,138.16, despite the language of HRS § 663-14. They contend that the words "or in any amount or proportion by which the release provides that the total claim shall be released, if greater than the consideration paid" in HRS § 663-14 were repealed by implication by the enactment of the Hawaii Comparative Negligence statute, HRS § 663-31, citing *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D. 1979).

While repeals by implication are possible, HRS § 1-9, they are not favored. *Costa Minors v. Flintkote Co.*, 42 Haw. 518 (1958). We see nothing in the wording or the legislative history of the comparative negligence statute to justify a repeal by implication of a portion of the Uniform Contribution Among Joint Tortfeasors Act. Hence we decline to follow *Bartels, supra.*

In a joint tortfeasor action the most desirable procedure is for all alleged tortfeasors to be joined in one action. As we have said: "This would ensure that a plaintiff will recover his full damages, neither more nor less . . . ." *Loui v. Oakley*, 50 Haw. 260, 265, 438 P.2d 393 (1968). In *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), we noted that "[t]he general rule in measuring damages is 'to give a sum of money to the person wronged which as nearly as possible, will restore him to the position he would be in if the wrong had not been committed.' " 52 Haw. at 167. Thus, in following that principle, the Intermediate Court of Appeals in *Beerman v. Toro Manufacturing Corp.*, 1 Haw. App. 111, 615 P.2d 749 (1980), adopted the position that a party was entitled to only one satisfaction of a judgment. We think that there should be only one recovery for compensatory damages except where statutes otherwise

provide.

At common law, the release of one joint tortfeasor for any amount released all tortfeasors. To ameliorate this harsh rule and to encourage settlements, the Uniform Contribution Among Joint Tortfeasors Act was promulgated and was adopted by Hawaii as §§ 663-11 through -17, HRS. It provides that the release of one joint tortfeasor, rather than wiping out the injured party's claim against other joint tortfeasors, merely reduces that claim by the amount paid for the release or the pro rata share of liability of the releasee, whichever is greater. In *Ginoza v. Takai Electric Co.,* 40 Haw. 691 (1955), we applied the statute to reduce the judgment by the consideration paid even though there was no determination of the releasee's liability. Appellants are entitled to no more compensatory damages than the jury awarded.

There are instances, of course, where the appellants will recover less than the full amount of the jury award. That result occurs whenever there is a settlement with the tortfeasors for a lesser monetary sum than that which the released tortfeasors would have had to pay as his, her, its or their pro rata share of the liability. That result, however, is exactly what the clear and unambiguous language of the statute requires. Appellants have cited us cases from other jurisdictions where courts have refused to honor the result dictated by the statutory language. We find the logic and language of those cases to be strained and unconvincing.

We hold, however, that the trial judge erred in treating each release separately and not collectively, with respect to its effect on plaintiffs-appellants' recovery. Under the trial court's approach, if the pro rata liability share of the released party, multiplied by the verdict, was a dollar figure greater than the amount paid for the release, he reduced the judgment by that amount. On the other hand, if that figure was lesser than the amount paid for the release, the trial judge reduced the judgment by the amount paid for the release. As we have said, read literally, the language of HRS § 663-14 and the language of the releases would seem to support that result. It is, however, basically an inequitable result as the figures, in the table previously set out, clearly show.

The trial judge's approach reduced the verdict of $564,055 for compensatory damages by the sum of $552,081.85. The releasees,

however, paid only a total consideration of $465,582.38 for the release of their total liability. The jury fixed their total liability at 67%. Sixty-seven per cent of $564,055 is $377,916.85. If plaintiffs-appellants had settled with all the twenty-two settling joint tortfeasors by one release for $465,582.38 or 67% of the liability, then, since the amount paid in dollars exceeded the dollar value of the pro rata share of the liability released, the verdict for compensatory damages would have been reduced only by the amount paid. In that event, the judgment against appellees would have been $98,472.62, not $11,973.15 as the judgment below provides.

The language of HRS § 663-14 refers to "one joint tortfeasor." The use of words in a statute signifying the singular is, however, not conclusive for, as HRS § 1-17 provides:

> Words in the masculine gender signify both the masculine and feminine gender, those in the singular or plural number signify both the singular and plural number, and words importing adults include youths or children.

In order to effectuate the plain intent of a statute, we long ago followed the rule of construction set forth in the statute just quoted. *See Akina v. Kai,* 22 Haw. 520 (1915), an election case. Recently, we utilized that statutory canon of construction to interpret the word "person" in a statute dealing with liability for negligence as meaning "persons." *Wong v. Hawaiian Scenic Tours, Ltd.,* 64 Haw. 401, 642 P.2d 930 (1982). Given the objectives sought to be achieved by the adoption of the Uniform Contribution Among Joint Tortfeasors Act, we do not think that the legislature intended for there to be a different result when an injured party settles with several tortfeasor defendants by separate releases as against what would have happened if settlement were with them by one joint release. We therefore read the words "one joint tortfeasor" in HRS § 663-14 to include the words "joint tortfeasors" and the word "release" as twice used therein to include the word "releases."

Accordingly, we reverse the judgment below and remand for the entry of a judgment against the appellees in the amount of $98,472.62 (the difference between $564,055 and $465,582.38) allocated $59,680.38 to appellee Raybestos-Manhattan and $38,792.24 to appellee/cross-appellant Eagle-Picher. Reversed and remanded for further proceedings in accordance herewith.

*Gary O. Galiher (Stanford H. Masui* and *L. Richard DeRobertis* with

him on the briefs) for plaintiff-appellants Nobriga.

*Brian K. Yomono* (*Michael F. O'Connor* with him on the briefs, *Ezra, O'Connor & Moon* of counsel); and *William J. Spriggs* (*Joe G. Hollingsworth* and *Donald W. Fowler, Spriggs, Bode & Hollingsworth* of counsel, Washington D.C.) for defendant-appellee Eagle-Picher Industries.

*Paula Devens* (*Paul Devens* with her on the brief, *Ikazaki, Devens, Lo, Youth & Nakano* of counsel) for defendant-appellee Raymark Industries, successor to Raybestos-Manhattan.

Amicus curiae: *William S. Hunt* and *Lawrence C. Foster* on the brief, *Paul, Johnson & Alston* of counsel); and *Jeffrey Silberfeld* (*Rivkin, Leff, Sherman & Radler* of counsel, New York) for Pittsburgh Corning.