526 A.2d 425

Vera HERTZOG, Assignee of the Blue Ball
National Bank, Appellant,

v.

George JUNG, and Annamarie Jung and Vince A. Guarini
and Linda L. Kachmar.

Superior Court of Pennsylvania.

Argued Oct. 1, 1986.

Filed May 28, 1987.

Christina L. Hausner, Lancaster, for appellant.

Daniel B. Huyett, Reading, for Guarina and Kachmar, appellees.

Before CAVANAUGH, McEWEN and BECK, JJ.

BECK, Judge:

The issue is whether a contract releasing real estate from the lien of a judgment continues to protect the real estate from levy and execution after the judgment is revived. This is an appeal by Vera Hertzog, the assignee of the judgment creditor, from an order striking the revived judgment and the writ of execution issued thereon insofar as each pertained to the released property. We hold that a release is to be interpreted according to the intent of the parties. We find that the parties intended this release to release the property from the lien of the original judgment and all revivals thereof. We therefore affirm the order of the trial court.

## I.

The relevant facts are not in dispute. On March 14, 1979, Blue Ball National Bank ("Bank") entered a judgment by confession against George Jung, Annamarie Jung, Vera Hertzog, and Levi Hertzog. This judgment was assigned as No. 1371 on the 1979 Confessed Judgment Docket for Lancaster County.

At the time of entry of judgment, the Jungs were owners in fee simple as tenants by the entireties of the premises at 105 Meadow View Drive in the city of Leola in Lancaster County. The Jungs reached an agreement with the Bank to free these premises from the lien of the confessed judgment. On August 30, 1979, the Bank filed a form captioned "Release of Real Estate" which listed the docket number of the confessed judgment and provided:

> Blue Ball National Bank, the Plaintiff in the above Judgment, for value received, hereby release [sic] from the lien, effect and operation of the above judgment ALL THAT CERTAIN lot or tract of land, together with the improvements thereon erected ... known as No. 105 Meadow View Drive, Leola, Pennsylvania.

In consideration of this release, the Bank was paid $24,000. At no time after the date of this agreement did the Bank attempt to levy on the Jungs' home.

In December, 1980, the Jungs conveyed this property to their daughter Angelica. Angelica reconveyed the property to the Jungs in April, 1981.

On January 12, 1983, the Bank praecipied for a writ of revival of judgment. This writ was issued and served on the Jungs, who did not contest the revival. Judgment in the revival action was entered in favor of the Bank on May 20, 1983. Nearly six months later, the Jungs conveyed their home to its current owners, Vince Guarini and Linda L. Kachmar.

On April 22, 1985, the Bank assigned its revived judgment to former judgment debtor Vera Hertzog. Soon afterward, Ms. Hertzog praecipied for a writ of execution, and a writ was issued directing the sheriff to levy upon, attach, and sell 105 Meadow View Drive. This writ was served on Mr. Guarini and Ms. Kachmar, who then filed a petition requesting the Court of Common Pleas of Lancaster County to (1) strike and/or open the confessed judgment as it pertained to 105 Meadow View Drive, and (2) vacate any execution on the judgment. Ms. Hertzog filed an answer to this petition. See Pa.R.Civ.P. 2959.

On April 7, 1986, 40 Pa.D & C 3d 474, the court ruled that the legal effect of the contract between the Bank and the Jungs had been to release 105 Meadow View Drive from the lien of the revived judgment. The court entered an order striking both the revived judgment and the writ of execution. Ms. Hertzog filed this timely appeal.[1]

Appellant contends that: (1) 105 Meadow View Drive is subject to the lien of the revived judgment, and (2) even if it were not, it was procedurally improper to grant a petition to

---

1. This appeal was filed pursuant to Pa.R.A.P. 311(a)(1). The rule provides that an appeal may be taken as of right from "[a]n order opening, vacating or striking off a judgment, or refusing to open, vacate or strike off a judgment. If orders opening, vacating or striking off a judgment are sought in the alternative, no appeal may be filed until the court has disposed of each claim for relief." In this case, the lower court disposed of each claim for relief, since it granted appellee's petition to strike and thereby rendered moot appellee's petition to open.

strike the judgment as it pertained to that property. We disagree on both counts.

■ "A petition to strike off a judgment is the remedy sought by one who complains of fatal irregularities appearing on the face of the record." *Cameron v. Great A & P Tea Co.,* 439 Pa. 374, 266 A.2d 715 (1970) (citations omitted). Matters dehors the record will not be considered, nor will documents placed in the record after judgment was entered. *Linnett v. Linnett,* 434 Pa. 441, 254 A.2d 7 (1969); *Bethlehem Steel Corp. v. Tri-State Industries,* 290 Pa.Super. 461, 434 A.2d 1236 (1981). However, the court may draw inferences as to the intentions of the parties from the documents in the record. *Solebury National Bank of New Hope v. Cairns,* 252 Pa.Super. 45, 380 A.2d 1273 (1977); *Commonwealth National Bank v. Boetzelen,* 338 Pa.Super. 237, 487 A.2d 943 (1985).

■ Applying these standards to this case, we find that the petition to strike the judgment as it pertained to 105 Meadow View Drive was properly granted if it can be determined from looking at the documents in the record prior to the entry of the revived judgment that the judgment was inaccurate in some important respect. *Cf. Pattinato v. Moody,* 248 Pa.Super. 32, 374 A.2d 1302 (1977) (misspelling of defendant's name insufficient to support a petition to strike). We find that examination of the release compels the inference that 105 Meadow View Drive was released from the lien of the original judgment and all revivals thereof. We hold that the blanket revival of the judgment, without reference to the exclusion of that property from the lien of the revived judgment, made the judgment facially incorrect and inaccurate. It was therefore properly subject to a petition to strike to correct the inaccuracy.

Appellant contends that the release entered into between Blue Ball National Bank and the Jungs released 105 Meadow View Drive from the lien of the original judgment only, and that the revival of the judgment created a new lien on the property.

In support of her contention, she cites sections 878 and 880 of the Judgment Lien Law of 1947.[2] Section 878 provides:

> Every judgment now or hereafter entered of record and indexed in any court of record in this Commonwealth shall be a lien upon all real property within the county where the judgment is entered, which at the time of the entry and indexing of the judgment is owned by the person against whom the judgment is entered, and shall, unless sooner discharged as provided by law, continue as a lien as to the defendant and all other persons for a period of five years from the date on which the judgment was entered, and no longer, unless the same is revised[1] as hereinafter provided. 1947, July 3, P.L. 1234, § 2.
>
> [1] Probably should read "revived."

Section 880 comes into play after the creditor procures a renewal of his judgment by praeciping for the prothonotary to issue a writ of revival (formerly known as a writ of scire facias). *See* Pa.R.Civ.P. 3025. Section 880 provides:

> "A writ of scire facias issued to revive a judgment at any time either before or after the expiration of five years after the indexing thereof, or before or after five

[2] 12 Pa.Stat.Ann. § 877–884 (Purdon 1953). Although the Judgment Lien Law has been officially repealed, it remains authoritative for present purposes.

In 1964, the Judgment Lien Law was suspended in so far as it conflicts with Pa.Rs.Civ.P. 3025–3049. *See* Rule 3049(3). These rules deal primarily with the proper method for filing for revival of judgment; they do not alter the substantive rights of judgment creditors. *See* Rule 3025 Note; 8 Goodrich-Amram 2d § 3025:1 (1977).

Fourteen years later, the General Assembly passed the Judiciary Act Repealer Act, Act of April 28, 1978, Pa.Laws 202, No. 53, § 1, which specifically repealed the Judgment Lien Law to the extent that the law is inconsistent with duly promulgated general rules of procedure. 42 Pa.Cons.Stat.Ann. § 20002(a)(1257) (Purdon 1982). However, since no current rule of procedure regulates the duration and scope of judgment liens, sections 878 and 880 continue in force as part of the common law of Pennsylvania. *See* 42 Pa.Cons.Stat.Ann. § 20003(b)(Purdon 1982); *In re Lucas,* 41 B.R. 785, 787 (E.D.Pa.1984); *cf. Commonwealth v. Ballem,* 334 Pa.Super. 255, 482 A.2d 1322 (1984) (Pa.Stat.Ann. tit. 17 § 1802 (Purdon 1962) (repealed 1978) continues in force); *Commonwealth v. Kelly,* 319 Pa.Super. 204, 465 A.2d 1301 (1983) (Pa.Stat.Ann. tit. 19, § 525 (Purdon 1964) (repealed 1978) continues in force).

years after the indexing of the last preceding judgment of revival thereof, shall, when indexed in the judgment index, be a lien upon all real property within the county which at the time of the indexing thereof is owned by the defendant against whom the original judgment is entered, whether or not such real property was owned by him at the time the judgment was indexed or previously revived. All liens against after-acquired property, or against property as to which the lien of the original judgment has been lost, shall be effective as of the date when the writ of scire facias was indexed, and shall, unless sooner discharged as provided by law, continue as a lien for a period of five years from the date of the indexing of the judgment of revival thereon, and no longer, unless the same is revived as provided in this act.[1]  1947, July 3, P.L. 1234, § 4.

[1.]  Sections 877–884 of this title."

Appellant's theory is that the Bank initially relinquished its right to execute on the Jungs' home pursuant to section 878, but obtained a new right to execute on these same premises pursuant to section 880.  By virtue of Section 878, the Bank originally acquired a lien on all the real property which the Jungs owned in Lancaster County as of March 14, 1979, when judgment was entered.  Appellant concedes that 105 Meadow View Drive was released from the lien of this judgment.  She interprets section 880, however, as creating a new and independent lien on all the real property which the Jungs owned in Lancaster County as of January 12, 1983 when a writ of revival was issued.  The 105 Meadow View Drive property was owned by the Jungs on that date.

We interpret section 880 as giving the creditor, in the absence of a release, a lien on all the debtor's real property in the county at the time that the writ of revival is issued. However, a release is a contract whereby a creditor may choose to waive legal rights to which he would otherwise be entitled.  We find that by signing the release, the Bank

surrendered any right to 105 Meadow View Drive it could otherwise have claimed under section 880.

■ A release is to be interpreted according to the intent of the parties. *Sparler v. Fireman's Insurance Co. of Newark, N.J.,* 360 Pa.Super. 597, 521 A.2d 433 (1987) (en banc); *Vogel v. Berkley,* 354 Pa.Super. 291, 511 A.2d 878 (1986). Intention can be gleaned from the actual language of the release, *Wenger v. Ziegler,* 424 Pa. 268, 226 A.2d 653 (1967), or from allegations of the parties as to their intentions. *Sparler.* We have neither source to guide us in this case. This release is silent as to the critical question of its duration or scope, and neither party has made any allegations regarding the intentions of the signatories to the release.

In the absence of such guidance, we turn to general principles of release construction:

> [I]n construing a release, a court should adopt an interpretation which, under all of the circumstances, 'ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.' *General Mills, Inc. v. Snavely,* 203 Pa. Super. 162, 168, 199 A.2d 540, 543 (1964). See: *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963); *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co.,* 327 Pa.Super. 99, 107, 475 A.2d 117, 121 (1984).

*Sparler v. Fireman's Insurance Co. of Newark, N.J.,* 360 Pa.Super at 601, 521 A.2d at 437; *see also Vogel v. Berkley.* Applying this standard, we are persuaded that this contract should be construed as releasing 105 Meadow View Drive from the lien of the original judgment and all revivals thereof.

A release from the lien of a judgment is designed to serve two functions. From the debtor's viewpoint, the release removes a cloud on title. This may well be essential in order for the debtor to exercise his right to alienate his land. From the creditor's viewpoint, the release provides a convenient opportunity to obtain partial satisfaction of his

debt. The value received in return for the release is a substitute for the proceeds which the creditor would have received if the debtor's land had been levied upon and sold.

Were we to accept appellant's view as to the scope of the release, we would have to believe that the Jungs gave valuable consideration for a release the effect of which could have been wiped out the very next day by the Bank's procuring a writ of revival of the judgment. This we decline to do. It would hardly be reasonable and natural for the Jungs to give valuable consideration for such a valueless right. Moreover, under appellant's theory the Bank would have been permitted to obtain two recoveries— one in consideration for the release of the premises from the lien, and one from a sheriff's sale of the premises. We simply cannot believe that the parties intended that the contract be so one-sided.

■ Furthermore, as between the Jungs and Blue Ball National Bank, certainly the Bank had greater expertise in and familiarity with matters of mortgage and lien law. Where one party has special expertise in the subject matter of a contract, silence in the contract will be construed against him or her in order to prevent overreaching of the less-knowledgeable party. *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987).

We note that the release stated that 105 Meadow View Drive was released from the "lien, effect and operation" of the judgment against the Jungs. This is impressive language that reasonably suggested to the Jungs that they were obtaining a release in perpetuity. In the absence of claims that the intentions of the parties were to the contrary, we give the contract that effect.

Having found that the revived judgment is facially incorrect and inaccurate because it failed to exclude 105 Meadow View Drive, we find the trial court was correct in striking the judgment and the writ of execution thereon.

Order affirmed.