602 A.2d 390

Theresa SCHUMAN

v.

**James VITALE and Linda Vitale.**

**Appeal of Carmen S. VITALE.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1990.

Decided Jan. 7, 1992.

Reargument Denied March 9, 1992.

Frank J. Rubinate, for appellant.

Thomas M. Devlin, for appellee.

Before PALLADINO, and BYER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Carmen S. Vitale (Vitale) appeals from the order of the Court of Common Pleas of Wayne County, dated June 15, 1989. The order denied and dismissed Vitale's request to pursue a cross-claim for contribution from the Department of Transportation (DOT).

This case arises from an automobile accident. Plaintiffs James and Linda Vitale filed a complaint against defendants Theresa Schuman, Ernest Williams, Carmen S. Vitale and DOT for personal injuries suffered in the accident.[1] Carmen Vitale filed an answer and new matter. The new matter included a cross-claim under Pa.R.C.P. 2252(d) asserting: (1) that his co-defendants were solely liable to plaintiffs; (2) that his co-defendants were jointly and severally liable with him; or (3) that his co-defendants were liable to him for contribution. (R.R. p. 16.)

1. The complaint alleged that James Vitale was a passenger in an automobile driven by Carmen Vitale and that on July 17, 1986 their vehicle was struck by a vehicle which was driven by Theresa Schuman and owned by Ernest Williams. The complaint further alleged that DOT negligently maintained the roadway on which the accident occurred. Linda Vitale, wife of James Vitale, claimed loss of consortium. The record reveals that Ernest Williams was dismissed with prejudice by stipulation, approved and ordered by the trial court on March 3, 1989.

After conducting a pretrial conference, the trial court, by order dated September 8, 1988, bifurcated the claims between James and Linda Vitale and the defendants from those amongst the defendants themselves. (R.R. p. 20.)

After a jury was impaneled, but before trial, the plaintiffs entered into a settlement with defendants Vitale, Schuman and DOT for $174,000. The defendants contributed to the total as follows: $115,000 from Vitale; $50,000 from Schuman; and $9,000 from DOT. Two releases were prepared.[2]

Vitale thereafter attempted to proceed with his cross-claim against DOT for contribution. The trial court dismissed Vitale's cross-claim based on Section 8324(c) of the Uniform Contribution Among Tort-feasors Act (UCATA), 42 Pa.C.S. § 8324(c), which provides:

(c) Effect of settlement.—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

The trial court examined the release by which Vitale and Schuman settled with the plaintiffs and determined that since DOT's liability to the plaintiffs was not extinguished thereby, Vitale was not entitled to recover contribution from DOT. The trial court stated that it relied upon the express statutory language of Section 8324(c) of UCATA.

Vitale argues that the trial court erred in failing to consider the totality of the settlement, which was effected by the two releases. Vitale argues that the release which effected settlement between the plaintiffs and DOT is part of a "package deal" whereby the plaintiffs also released Vitale and Schuman from liability. Since all defendants were released from liability, even though by separate doc-

2. In one release, Vitale and Schuman and their insurance carriers were discharged from liability to the plaintiffs for the stated consideration of $165,000. In the second release, DOT was discharged from liability by payment of $9,000.

uments, Vitale contends, Vitale may seek contribution from DOT in accordance with Section 8324(c) of UCATA.[3]

DOT contends that a reading of the release in question (that which settled the case between the plaintiffs and Vitale and Schuman) reveals no mention whatsoever of the plaintiffs' intent to discharge DOT from liability, and, therefore, Vitale's claim against DOT for contribution must fail.

We begin with a review of the rules of statutory construction. Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903, provides that "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." Section 1921(b), 1 Pa.C.S. § 1921(b), provides "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." We next examine UCATA with these principles in mind.

Section 8324 of UCATA provides in whole:

(a) General rule.—The right of contribution exists among joint tort-feasors.

(b) Payment required.—A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

(c) Effect of settlement.—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

There are no words or phrases in Section 8324(c) of UCATA which are beyond common and approved usage, except the phrase "joint tort-feasor," which is specifically defined in Section 8322, 42 Pa.C.S. § 8322.[4] Additionally,

3. This case presents a question of apparent first impression in any jurisdiction which has enacted UCATA.

4. That section defines a "joint tort-feasor" as "two or more persons jointly or severally liable in tort for the same injury to persons or

the words of Section 8324(c) are clear and free from ambiguity.

Reading the words of Section 8324(c) as chosen by the legislature, we determine that the section means that where there are two or more joint tort-feasors and one of them settles with the injured person, such settling joint tort-feasor may not recover contribution from the other non-settling joint tort-feasors unless the settlement by the settling joint tort-feasor extinguishes the liability of the non-settling joint tort-feasor to the injured person.

That the Vitale and Schuman settlements, separately or together, did not extinguish DOT's liability to the plaintiffs is admitted by Vitale. In his brief, Vitale, after quoting Section 8324(c), writes:

> Admittedly, the Vitale–Schuman release does not extinguish the liability of co-Defendant PennDOT. Standing alone, the Order denying and dismissing the cross-claim of Defendant Vitale against PennDOT would be a correct one.
>
> In this case, settlement was effected by way of two Releases. Defendant PennDOT's liability to the Plaintiffs was extinguished by settlement through a separate Release executed at the same time, and as a "package deal".
>
> A review of the PennDOT release, ... shows that PennDOT has been released from any and all liability to the Plaintiffs. Therefore, since PennDOT's liability to the Plaintiffs has been extinguished by the settlement, PennDOT is available for contribution.

(Appellant's brief, pp. 8–9)

Vitale's argument is self-defeating. Although it is true the settlement of plaintiff's claim was effected by way of two "releases," one released only Vitale, Schuman and their insurance carriers. DOT was neither a party to this release nor was its liability extinguished by the Vitale–Schuman

property, whether or not judgment has been recovered against all or some of them."

settlement. DOT was, as stated by Vitale, released by reason of a payment by DOT of $9,000.00 on the claim asserted against it. DOT's liability was not, as admitted by Vitale, extinguished by the Vitale–Schuman settlement. Although all three settlements occurred contemporaneously ("package deal"), Vitale fails to articulate how the payment of the separate sums by each of the three joint tort-feasors creates a right of contribution where the Vitale–Schuman settlements viewed separately or together did not extinguish the liability of DOT.

Accordingly, we determine that Section 8324(c) of UCATA requires us to conclude that since the settlement of the claim by Vitale and Schuman against themselves did not extinguish the liability of DOT, Vitale is precluded from recovery of contribution from DOT. The order of the trial court is affirmed.

## ORDER

AND NOW, this 7th day of January, 1992, the order of the Court of Common Pleas of Wayne County, dated June 15, 1989, is affirmed.

This decision was reached before the conclusion of Judge BYER's service.

BYER, Judge, dissenting.

This appeal from the denial of a claim for contribution against a joint tortfeasor presents a question of apparent first impression in any jurisdiction which has enacted the Uniform Contribution Among Tortfeasors Act. Where joint tortfeasors settle with a plaintiff as part of a "package deal," does the fact that they obtain separate releases rather than a single release naming all defendants preclude a claim for contribution between settling defendants? The trial court answered this question in the affirmative and dismissed a claim for contribution. The majority affirms. I would answer the question in the negative and reverse.

In this case, there was one settlement, but it was accomplished by two releases. One release, for the stated consideration of $165,000, discharged defendants Vitale and Schuman and their insurance carriers. While waiving any further rights against each other, this release expressly reserved their rights to pursue any claim against co-defendant DOT. The second release for a stated consideration of $9,000 discharged plaintiffs' claim against DOT. All parties and their counsel received copies of both releases accompanied by a letter from plaintiffs' counsel.

The trial court dismissed Vitale's cross-claim based on section 8324(c) of the Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S. § 8324(c), which provides:

(c) **Effect of settlement.**—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

The language of this statute clearly denies parties who settle any right to contribution from non-settling joint-tortfeasors. However, what constitutes "the settlement" for purposes of this statute is less obvious.

In reaching its decision, the trial court analyzed the Schuman–Vitale release and the express language of section 8324(c). Noting that this release clearly failed to extinguish liability between DOT and the plaintiffs, the court concluded that Vitale could not look to DOT for contribution. However, I believe that this overlooks the effect of the second release.

Although the Schuman–Vitale release did not discharge DOT, the plaintiffs did, in fact, contemporaneously release DOT from any liability to them as part of the same settlement. If payment to the plaintiff in exchange for release from liability is the key to a joint-tortfeasor's availability for contribution, as the trial court opinion implied, then if the trial court had also considered the second release, it

should have agreed with Vitale's conclusion that, "[s]imply put, Defendant PennDOT has been released from liability and is, therefore, available for contribution pursuant to 42 Pa.C.S.A. Section 8324(c)." (Appellant's brief, 7).

DOT urges that releases must be interpreted according to the intent of the parties. *Hertzog v. Jung*, 363 Pa. Superior Ct. 439, 526 A.2d 425 (1987).[1] The Schuman–Vitale release alone does not extinguish DOT's liability. On the other hand, the two releases in this case, although separate documents, were executed contemporaneously as part of a settlement involving three defendants. Moreover, the September 23, 1988 letter from plaintiffs' counsel[2] confirming the settlement and requesting counsel for the defendants to forward an appropriate release implies that this was, in fact, a "package deal" for $174,000.00. These circumstances indicate the parties' intent to treat the two releases as one larger settlement.

1. In *Milford v. Metropolitan Dade County*, 430 So.2d 951 (Fla.App. 1983), a Florida court addressed this issue of party intent. *Milford* involved a suit for damages arising from a motorcycle collision, in which a defendant filed a third party complaint against the county for contribution. Thereafter, the original plaintiff and defendant settled and executed a release which omitted mention of the county. When contribution was sought, the county argued that it could not be held liable for contribution, because the release failed to extinguish its liability to the plaintiff. The defendant argued that the release should be reformed to reflect the true intent of the parties: extinguishing the county's liability and activating the right to contribution. The court stated:

   > The fact that the release as written unambiguously fails to extinguish the County's liability is plainly not dispositive and, indeed, is irrelevant to [the] claim for reformation.... Where an agreement does not carry out the intent of the parties or violates such intent, equity will reform the agreement.

   430 So.2d at 952.

2. That letter reads as follows:

   > This correspondence will serve to confirm our settlement of the above-captioned matter for the sum of $174,000.00 with the insurance carrier for Carmen Vitale, contributing the sum of $115,000.00, the insurance carrier for Theresa Schuman, contributing $50,000.00 and the Commonwealth of Pennsylvania, Department of Transportation, contributing the sum of $9,000.00.
   >
   > Would you kindly forward the appropriate Release at your earliest opportunity so that we can formally conclude this matter.

It is worth noting that DOT's brief phrases the "statement of the question involved" to indicate that these two releases may equal one settlement:

## STATEMENT OF THE QUESTION INVOLVED

Is one co-defendant precluded from pursuing a cross-claim for contribution from another co-defendant *when settlement of plaintiffs' claims are effectuated by means of separate releases* which do not name both co-defendants as released parties? (emphasis added)

(DOT's brief, 1).

The majority opinion also recognizes that this case involves only a single settlement. The majority opinion states:

After a jury was impaneled, but before trial, the *plaintiffs entered into a settlement with defendants Vitale, Schuman and DOT for $174,000.* The defendants contributed to the total as follows: $115,000 from Vitale; $50,000 from Schuman; and $9,000 from DOT. *Two releases were prepared.*

Maj. op., 562. (Emphasis added).

DOT also contends that its argument is supported by 42 Pa.C.S. § 8326, which provides in pertinent part:

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides ...

In fact, 42 Pa.C.S. § 8326 does not affect Vitale's argument adversely. Vitale readily admits that the Schuman–Vitale release does not provide for DOT's discharge; however, he contends that DOT was relieved of liability to the plaintiffs in a separate, contemporaneous release, and we should consider the two releases together as a single settlement. I agree. By adopting this reasoning, and viewing the two documents merely as portions of one settlement, we would adhere to the language of the statute as well as its spirit.

My research has not uncovered any case on point.[3] However, I find it particularly significant that 42 Pa.C.S. § 8324(c) uses the term "settlement" and not "release." As this case demonstrates, the two terms are not always synonymous. There is no good reason why we should prohibit a single settlement with multiple joint tortfeasor defendants using separate releases, unless the defendants forfeit their rights to contribution.[4]

I respectfully suggest that the effect of the majority opinion is to "amend" 42 Pa.C.S. § 8324 by changing the General Assembly's word "settlement" to "release." The General Assembly clearly knew the difference between these two terms. The General Assembly used the term

---

**3.** Although no Pennsylvania cases deal with this situation, a similar question was considered in Hawaii under its version of the act. In *Nobriga v. Raybestos–Manhattan, Inc.*, 67 Haw. 157, 683 P.2d 389 (1984), the court dealt with an injured plaintiff who filed suit against twenty-four different manufactures, twenty-two of which settled and were separately released by the plaintiff. *Nobriga* held that the trial court erred in treating each release separately and not collectively with respect to its effect on the plaintiff's recovery. The court in *Nobriga* looked to its statute which provided that a release by the injured person of one joint tortfeasor does not discharge the other tortfeasor unless the release so provides.

*Nobriga* refused to follow the literal wording of the Hawaii statute and treat each release as a separate settlement. Rather, that court chose to consider the objectives sought to be achieved by the adoption of the act. It concluded that the legislature did not intend a different result when an injured party settles with several tortfeasor defendants by separate releases against what would have happened if settlement with all of them was effected by a single, joint release. Therefore, the court read the singular words "one joint-tortfeasor" and "release" to include the plurals, *i.e.* tortfeasors and releases.

**4.** To hold otherwise would frustrate the aims of 42 Pa.C.S. § 8324 and invite abuse. That section indicates that when joint tort-feasors act in common to settle with the injured party, they are entitled to seek contribution from each other for any sums paid in excess of their shares of responsibility. It is apparent from the evidence in this case that all three defendants were released simultaneously after they reached a settlement agreement with the plaintiffs, even though that settlement was implemented by separate releases. To deny Vitale the right to seek contribution from DOT under these circumstances would not make sense and would not further the aim of the statute to encourage defendants to avoid letting the ultimate determination of contribution impede settlement with the injured plaintiff.

"release" in other provisions of the Uniform Contribution Among Tortfeasors Act. *See* 42 Pa.C.S. §§ 8326, 8327. However, in § 8324(c) the General Assembly did not use the term "release," but instead used the term "settlement." We must assume that this choice of language by our General Assembly was deliberate.

We simply are "not free to engraft additional verbiage in an effort to pursue the ... spirit" of a statute. *McNelly Appeal*, 122 Pa.Commonwealth Ct. 601, 607, 553 A.2d 472, 475 (1989), (citing *Black v. Billy Penn Corp.*, 72 Pa.Commonwealth Ct. 628, 632, 72 Pa.Commonwealth Ct. 628, 632, 457 A.2d 192, 193 (1983) (additional citation omitted)). Similarly, our Supreme Court has recently stated in *In re J.S.*, 526 Pa. 418, 426, 586 A.2d 909, 913 (1991), that it "is not our stead to engraft upon legislation provisions which the General Assembly did not consider or did not see fit to enact. *See Commonwealth v. Revtai*, 416 Pa. 53, 532 A.2d 1 (1987)."

Therefore, I would hold that the term "settlement" in 42 Pa.C.S. § 8324(c) includes a settlement which is accomplished through the execution of more than one release, at least where the circumstances indicate that the separate releases are part of a single or "package deal" settlement.[5]

I respectfully dissent.

---

5. The use of separate releases may actually facilitate faster payments to an injured plaintiff. There can be time consuming logistical problems in obtaining multiple signatures on a single release where the defendants' signatures also are required or there are multiple plaintiffs. In addition, there may be circumstances where there is an overall settlement with multiple defendants, but the precise language of the individual releases is the subject of separate negotiation with individual defendants. No reasons of policy favor the discouraging of such settlement options; in fact, I fear that to do so might discourage the desired goal of early settlement in some situations.