652 A.2d 916

**CLAIRTON CORPORATION, Appellant**

**v.**

**CHICAGO TITLE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1994.

Filed Jan. 3, 1995.

490

John M. Studeny, Pittsburgh, for appellant.

Edward B. Friedman, Pittsburgh, for appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

HESTER, Judge:

Clairton Corporation appeals from the judgment entered in the Court of Common Pleas of Allegheny County on April 6, 1994, after a nonjury trial resulted in, *inter alia,* the rejection of a claim premised upon a title insurance policy which had been issued by Chicago Title Insurance Company ("Chicago Title"). For the reasons set forth below, we affirm.

The facts and procedural history of this case may be summarized as follows. On October 25, 1956, John S. Roth and his wife, Ruth, agreed to lease Elmer J. Jonnet, Jr., nearly two and one-half acres of land along the William Penn Highway in the Borough of Monroeville ("the property"). The lease, which eventually was recorded in the office of the Allegheny County Recorder of Deeds, encompassed a term of twenty years. At Jonnet's option, it could be renewed for two additional twenty-year periods. Furthermore, while the lease granted Jonnet the right to erect buildings and other structures upon the property, it provided that ownership of all such improvements, along with the fixtures contained therein, would vest in the Roths at the time of termination.

In the years that followed the execution of the lease, the Roths died, and Jonnet, in conjunction with others, erected a ten-story office building on the property. The interest of the Roths passed to Dorothy LaBossiere, the successor trustee under the will of Mr. Roth. In her capacity as trustee, LaBossiere instituted several actions against Jonnet.

On May 28, 1981, while the lease was still in effect, Joe Noris transferred a $332,923 judgment against Jonnet from San Diego, California to Allegheny County, where it was indexed and docketed in the office of the Prothonotary of Allegheny County at number GD81–14312. Eight months later, on January 27, 1982, LaBossiere agreed to settle her

actions against Jonnet by selling him the property for $510,000 secured by a purchase money mortgage note and mortgage. On February 1, 1982, after Jonnet obtained equitable title to the property through the settlement agreement, Noris filed a praecipe for the reissuance of a writ of execution against him. The writ subsequently was reissued and service effectuated.

On February 26, 1982, Jonnet transferred his rights under the settlement agreement to appellant. That same day, with Jonnet acting as surety on its purchase money mortgage, appellant bought the property. In connection with that transaction, LaBossiere assigned Jonnet's lease to appellant. Appellant and Jonnet then terminated it.

One week after the purchase, Chicago Title issued appellant a title insurance policy in the amount of $510,000. Although that policy specifically excluded from coverage matters relating to the assignment and termination of Jonnet's lease, it contained no exception for the Noris judgment. On February 21, 1984, upon the praecipe of Noris, the writ of execution against Jonnet was reissued. On that same day, naming both Jonnet and appellant, Noris filed a lis pendens against the property.

In late 1985, Noris instituted equity proceedings against Jonnet and appellant by filing a praecipe for a writ of summons. On October 25, 1985, following the effectuation of service, Noris filed a complaint, which asserted that Jonnet had formed appellant on February 24, 1982, for the purpose of acquiring the property and that both the conveyance of equitable title and the termination of the lease amounted to efforts to defraud Jonnet's creditors. Consequently, Noris requested that the trial court, *inter alia,* declare Jonnet's conveyance of his equitable title fraudulent, pierce appellant's corporate veil, and impress a trust upon the property.

In April 1988, shortly before the scheduled trial, Noris's counsel informed appellant that he believed that the 1981 judgment lien against Jonnet had attached to Jonnet's equitable interest in the property upon the reissuance of the writ of execution in 1982. After investigating that claim, counsel for

appellant informed Chicago Title of the claim's existence and requested Chicago Title to indicate whether it would provide appellant with a defense. On May 13, 1988, three days before Chicago Title received that notification, appellant and Noris entered into a stipulation which settled the equity action. In that stipulation, neither party admitted the efficacy of the Noris judgment lien against the property. However, in an effort to induce Noris to forebear from executing upon it, appellant agreed to pay him $295,000, a sum substantially less than the actual amount of the judgment. Chicago Title subsequently informed appellant that the payment to Noris was not covered under the title insurance policy and thus, declined to provide reimbursement.

On May 16, 1990, appellant instituted proceedings against Chicago Title by writ of summons. Appellant subsequently filed a complaint, which requested the reimbursement of losses resulting from the payment to Noris. After Chicago Title filed extensive preliminary objections to the complaint, appellant amended it. Although Chicago Title again responded with preliminary objections, they proved unsuccessful. Appellant eventually amended the complaint a second time to demand damages of $337,575 plus interest. On April 29, 1991, Chicago Title filed an answer and new matter to the amended complaint, which denied liability and raised numerous defenses. The action then proceeded toward trial.

On May 10, 1993, the trial court found in favor of Chicago Title on appellant's complaint and dismissed the various claims raised by Chicago Title in its answer and new matter. Shortly thereafter, appellant filed a motion for post-trial relief. In that motion, appellant alleged, among other things, that the trial court erred in failing to find that a judgment lien had attached to Jonnet's interests under both the ground lease and the LaBossiere settlement agreement and that it remained effective on the date of the Noris stipulation. Chicago Title subsequently filed a motion requesting permission to move for post-trial relief nunc pro tunc. Attached to Chicago Title's request was a document which set forth the issues that it wished to raise. On March 29, 1994, without expressly ruling

upon Chicago Title's nunc pro tunc request, the trial court denied both parties post-trial relief. Judgment was entered eight days later upon the praecipe of appellant. This timely appeal followed.

Raising a purely legal claim, appellant asserts that the trial court's verdict in favor of Chicago Title must fail since the property was encumbered by a lien at the time of the Noris stipulation. Specifically, appellant contends that the Noris judgment resulted in a lien on the property in two distinct ways. First, appellant alleges that a lien attached to Jonnet's leasehold. Second, appellant avers that a lien attached to Jonnet's equitable interest in the property following the reissuance of the writ of execution in 1982. Appellant argues that the lien on Jonnet's equitable interest became effective against the legal title when Jonnet assigned that interest to appellant, and appellant purchased the property from LaBossiere.

Preliminarily, we note:

Judgment liens are a product of centuries of statutes which authorize a judgment creditor to seize and sell the land of debtors at a judicial sale to satisfy their debts out of the proceeds of the sale. The judgment represents a binding judicial determination of the rights and duties between the parties, and establishes their debtor-creditor relationship for all the world to notice when the judgment is recorded in a Prothonotary's Office. When entered of record, the judgment also operates as a lien upon all real property of the debtor in that county. 42 Pa.C.S. Sections 4303(a)(b), 1722(b) and 2737(3).

*In re Upset Sale,* 505 Pa. 327, 334, 479 A.2d 940, 943 (1984). Moreover, the lien affects even the equitable and beneficial interests of the debtor. *Id.; see also Parnes v. Hibbs,* 191 Pa.Super. 56; 155 A.2d 426 (1959). "The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien." *In re Upset Sale, supra,* 505 Pa. at 334–35, 479 A.2d at

943–44. Finally, we note that a judgment lien against the equitable interest of a debtor will also affect his legal interest when he obtains legal title. *Richter v. Selin,* 8 Serg. & Rawle 425 (1822). Keeping these principles in mind, we address the components of appellant's claim.

Appellant alleges that a lien attached to Jonnet's interest under the lease when Noris transferred his judgment to Allegheny County in 1981.[1] We disagree. It long has been clear that a lease for years constitutes an item of personalty rather than an estate in realty and thus, is not subject to a judgment lien. *See Shaeffer v. Baeringer,* 346 Pa. 32, 29 A.2d 697 (1943).

Appellant attempts to overcome our conclusion by relying upon *Ely v. Beaumont,* 5 Serg. & Rawle 124 (1819). However, our review of *Ely* reveals that it provides no support for appellant's position. In that case, the lessee possessed authority under the lease to erect structures upon the land, the right to which he would retain. The Supreme Court of Pennsylvania determined that the lessee's exercise of his privilege resulted in the acquisition of an interest in the premises other than the mere chattel interest of a leasehold. The Court found that a lien properly could attach to that interest.

In the present case, the lease granted Jonnet the right to erect buildings and other structures upon the property. However, it did not permit Jonnet to retain any interest in such a structure beyond the term of the leasehold. Rather, the lease specifically provided that legal title to all erected structures, along with the fixtures contained therein, would vest in the lessors at the termination of the lease. Thus, even though

1. Appellant asserts that Chicago Title "appeared to admit at trial that there was a lien against" Jonnet's interest under the lease. *See* Appellant's brief at 17. However, appellant points to no specific portion of the record where such an implied admission may be found. Moreover, our thorough examination of the record reveals no indication that Chicago Title ever admitted that any lien *actually attached* to Jonnet's leasehold interest. At most, we have been able to discover that Chicago Title presented evidence indicating that any lien which *might have attached* to the leasehold terminated with it.

Jonnet erected a structure on the property, he, unlike the lessee in *Ely*, possessed no interest greater than a mere leasehold.

■ We now turn to the second aspect of appellant's claim. As mentioned previously, a lien may attach to an equitable interest in property, and it cannot be divested by a conveyance by the debtor. Moreover, a lien on an equitable interest in property attaches to legal title upon a purchase of the property by the equitable titleholder. Consequently, the determination of whether a lien attached to Jonnet's equitable interest in the property is of critical importance.

■ In this Commonwealth, when legal title has not been conveyed, the equitable interest of a purchaser under an installment land contract is subject to a lien to the extent of the purchase money actually paid. *See Wilson v. Stoxe*, 10 Watts 434 (1840); *Purviance v. Lemon*, 16 Serg. & Rawle 292 (1827); *Auwerter v. Mathiot*, 9 Serg. & Rawle 397 (1823). In the present case, Jonnet unquestionably possessed an equitable interest in the property under an installment land contract. However, the record demonstrates that Jonnet never attempted to exercise his rights under that contract, but rather assigned them to appellant. Thus, Jonnet never paid any purchase money to LaBossiere and no lien attached to his equitable interest. As no lien attached to Jonnet's interest, none passed with its assignment to appellant or impacted upon the legal title when appellant completed the purchase from LaBossiere.

Appellant contends that the present case, unlike *Wilson*, *Purviance*, and *Lemon*, involved both a closing and the resulting merger of the legal and equitable titles. Consequently, it argues that those cases are distinguishable. We disagree. While the present case involved a completed purchase, the party which completed that purchase was not the original judgment-debtor vendee, Jonnet. Accordingly, since the judgment lien initially could attach only to the interest of the judgment-debtor, appellant's contention provides no basis for distinguishing the cases in question.

Appellant also contends that Jonnet satisfied the purchase money requirement by agreeing to the termination of his favorable lease. Even if we assumed that the purchase money requirement could be satisfied by consideration other than the payment of money, appellant's claim would entitle it to no relief. Our review of the record reveals no indication that Jonnet agreed to relinquish his lease in connection with the LaBossiere settlement agreement. Indeed, the settlement agreement contains no mention of that subject. Furthermore, the record establishes that Jonnet agreed to the termination *after* appellant completed the purchase and LaBossiere assigned the lease to it. Therefore, the lease termination could not have constituted consideration relating to the settlement agreement and will not support the attachment of a lien to Jonnet's equitable interest.[2]

2. Even if we assumed that a lien had attached to either Jonnet's leasehold or his equitable interest, it would not have been in effect in 1988 when the Noris stipulation was signed. When a party acquires property bound by a judgment lien, thereby becoming a terre tenant, the judgment creditor must file a writ of revival within five years of the date on which the original judgment was indexed to enforce the lien against him. *See Ricci v. Cuisine Management Services, Inc.*, 423 Pa.Super. 371, 621 A.2d 163 (1993). Moreover, in order for revival to be effective against the land of a terre tenant, the terre tenant must be made a party to the proceedings. *Id.*

In the present case, neither party disputes that the 1981 judgment against Jonnet was revived by the reissuance of a writ of execution against him on February 1, 1982. Rather, the parties' arguments on the matter concern whether the judgment later was revived within the requisite five-year period so that it was in effect on the date of the Noris stipulation. Appellant contends that the reissuance of the writ of execution in 1984 effected that revival. We disagree. Our review of the record reveals that the 1984 revival proceedings were commenced solely against Jonnet. As appellant, the terre tenant, was not joined as a party to the proceedings, that revival was inadequate to bind the property. Accordingly, we find that any lien against the property would have expired in 1987, prior to the Noris stipulation.

Our conclusion in this regard is unaffected by the fact that the record demonstrates that Noris filed a lis pendens against the property in 1984 which named both appellant and Jonnet. A lis pendens is the jurisdiction, power, or control which a court acquires over property involved in an action until a final judgment is rendered with respect to it. *See Vintage Homes, Inc. v. Levin*, 382 Pa.Super. 146, 554 A.2d 989 (1989). A lis pendens merely notifies third parties that any interest which may be acquired in the property pending the litigation is subject to the result of the action. *Id.* Listing property as lis pendens is inadequate to

 We now address appellant's assertion that the trial court properly dismissed Chicago Title's affirmative defenses. Specifically, appellant contends that since the evidence presented at trial was conflicting, the trial court's decision in that matter should be affirmed. *See* Appellant's brief at 20.

 It long has been clear that unless the right of appeal is enlarged by statute, only parties aggrieved from appealable orders may appeal therefrom. *See* Pa.R.A.P. 501. Moreover, the phrase "appealable order" includes within its scope judgments entered upon the praecipe of a party. *See* Pa.R.A.P. 301. Finally, we note:

> To be "aggrieved" a party must have been adversely affected by the decision from which the appeal is ... taken. *In re Appeal of Estate of Achey,* 86 Pa.Cmwlth. 385, 392–393, 484 A.2d 874, 878 (1984), *aff'd.,* 509 Pa. 163, 501 A.2d 249 (1985) (per curiam); *In re Controller's Report, Year 1972, of Lackawanna County,* 37 Pa.Cmwlth. 580, 589, 390 A.2d 1368, 1372 (1978). *See also: In the Matter of Harrison Square, Inc.,* 263 Pa.Super. 324, 327, 397 A.2d 1230, 1231–1232 (1979); *Prior v. Borough of Eddystone,* 30 Pa.Cmwlth. 536, 538 n. 1, 374 A.2d 981, 982 n. 1 (1977). Generally, a prevailing party is not "aggrieved," and, therefore does not have standing to appeal an order which has been entered in his or her favor. *See: In re Appeal of Estate of Achey, supra,* 86 Pa.Cmwlth. at 394, 484 A.2d at 879; *Burchanowski v. County of Lycoming,* 32 Pa.Cmwlth. 207, 210, 378 A.2d 1025, 1027 (1977).

*Green by Green v. SEPTA,* 380 Pa.Super. 268, 271, 551 A.2d 578, 579 (1988).

Instantly, appellant has appealed from the judgment entered upon its praecipe following the conclusion of a bench trial and the disposition of post-verdict motions. Thus, the present appeal unquestionably was taken from an appealable order. However, as the claim raised by appellant concerns a matter which was decided in its favor by the trial court,

create a lien and has no application as between the parties to the action themselves. *See Dice v. Bender,* 383 Pa. 94, 117 A.2d 725 (1955). Accordingly, it cannot be utilized to revive a judgment lien.

appellant was not aggrieved by the portion of the verdict in question and has no standing to assert any issue regarding its propriety. Thus, we need not address this claim further.

Judgment affirmed.