**MID-STATE BANK AND TRUST COMPANY, and Pennsylvania Banker's Assoc., Appellants**

**v.**

**GLOBALNET INTERNATIONAL, INC., Appellee,**

**v.**

**Pamela K. BLESH (JOHNSON), Appellee.**

**MID-STATE BANK AND TRUST COMPANY, and Pennsylvania Banker's Assoc., Appellants**

**v.**

**David E. JOHNSON and Jody Johnson, his wife, Appellees,**

**v.**

**Pamela K. BLESH (JOHNSON), Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 25, 1997.

Filed April 1, 1998.

Steven S. Hurvitz, State College, for appellant.

Malcolm S. Mussina, Williamsport, for Blesh, participating party.

Before CAVANAUGH, TAMILIA and HUDOCK, JJ.

CAVANAUGH, Judge:

This case involves a dispute between parties regarding the priority of their respective liens against real estate and the distribution of proceeds of a sheriff's sale. Specifically, these consolidated appeals are from the court's order of September 16, 1996, which granted the exceptions of appellee, Pamela K. Blesh, to a proposed order of distribution of the proceeds of a sheriff's sale on the grounds that her lien against the foreclosed real property, imposed pursuant to an order of equitable distribution which was reduced to judgment but not timely revived, took priority over a subsequent mortgage lien recorded by appellant, Mid–State Bank and Trust Company. Because we find that Mid–State did not have either actual or constructive knowledge of Ms. Blesh's interest in the property, due, in part, to her failure to timely revive her judgment lien, we reverse the court's order and remand with instructions to disburse the proceeds of the sheriff's sale in accordance with this opinion.

In 1985, appellee was divorced from her husband, David E. Johnson. A decree of equitable distribution was entered on March 19, 1986, which required appellee to convey her interest in the marital real estate and flourmill business to Johnson and for Johnson to pay appellee the sum of $385,381.09, plus interest, in equal monthly installments over a period of fifteen years. As security for the award to appellee, the court imposed a lien against the real estate and the mill's assets.[1] The lien was reduced to judgment

---

1. The order provided, at paragraph A(3): "In accordance with the authority granted in 23 P.S. § 401(g) [now 23 Pa.C.S.A. § 3502(b)]

and entered in the Clinton County Judgment Index on January 27, 1987, on the advice of the Clinton County solicitor. Additionally, on the same date the lien was reduced to judgment, the deed by which appellee conveyed her interest in the marital real estate to her former husband was duly recorded with the Clinton County recorder of deeds at deed book 302, page 374. The deed passed title for nominal consideration (one dollar) and provided:

> The parties were divorced on May 24, 1985, vesting title as tenants in common. The Grantor herein is conveying her one-half interest only to the Grantee.
>
> This is a conveyance between persons, formerly husband and wife, pursuant to a Court Order of Equitable Distribution and therefore not subject to Realty Transfer Tax.

In 1993, appellee's former husband stopped making his required monthly installment payments to appellee. Appellee attempted, through court intervention, to enforce the terms of the equitable distribution order. However, appellee did not record the order of equitable distribution with the Clinton County recorder of deeds until September 14, 1994 and did not file a praecipe for writ of revival of the January 27, 1987, judgment lien until September 27, 1995.

In the meantime, appellee's former husband used the real property at issue as collateral for a loan in the amount of $1.5 million from Mid–State Bank, with surety for repayment provided by Globalnet International, Inc. Mid–State recorded its mortgage lien on the properties with the Clinton County recorder of deeds in August 1994. Appellee's former husband defaulted on the loan and judgment by confession was entered against him, his wife, and Globalnet on August 18, 1995. Upon writs of execution issued that same date, a sheriff's sale of the properties was scheduled for December 6, 1995.

On November 13, 1995, appellee filed a petition to intervene, seeking to have Mid–State joined in appellee's prior divorce proceedings against her former husband, or, in the alternative, to be joined in Mid–State's current proceedings against him. On November 30, 1995, appellee filed a motion to stay the sheriff's sale pending the court's disposition of her petition to intervene. By order dated December 6, 1995, the court stayed the sale.

On March 1, 1996, the court denied appellee's petition to intervene and lifted the stay. Mid–State reinstated its writs of execution and a sheriff's sale was held on June 26, 1996. Mid–State was the successful bidder, purchasing the properties for a combined total of $435,000.00. The sheriff filed a schedule of distribution proposing to distribute the entire proceeds of the sale to Mid–State, to which appellee filed exceptions. The court ordered the parties to submit briefs and ordered oral argument on the matter. However, by order dated September 9, 1996, the court vacated the order for oral argument, having determined that the matter could be decided on the briefs alone. By Opinion and Order dated September 16, the court granted appellee's exceptions on the ground that appellee's lien on the property took priority over Mid–State's lien. The order directed that appellee be paid $304,944.18 from the proceeds of the sale, that amount representing payment still due her under the order of equitable distribution which created the lien. Mid–State's subsequent petition to invest the funds for distribution pending appeal was granted by order dated October 9, 1996. The denouement of the foregoing is the present appeal by Mid–State which alleges:

the Court hereby imposes a lien or charge against the real estate being distributed to Plaintiff in [paragraph] (4) herein as well as a lien or charge against the assets of Clintondale Mills, Inc., said lien or charge to be subordinate to any existing liens or charges against said assets or real estate. Said lien or charge is imposed as security for the payment of the award in [paragraph] (2) herein and may be released or subordinated as the parties may hereafter agree or by subsequent order upon good cause shown."

The real estate conveyed to appellee's former husband consisted of three tracts of real property in Clinton County upon which existed the following improvements: one large stone and frame three story grist mill; a dwelling house and barn used as a garage; and a separate two story frame dwelling house, one car garage and outbuilding.

A. The trial court erred in holding that the unrevived judgment lien granted to Pamela K. Blesh pursuant to 23 Pa.C.S.A. § 3502(b) is entitled to priority over Mid–State Bank's subsequently filed mortgage lien.

B. The trial court erred in finding that Mid–State Bank had either actual or constructive notice of the lien created by a Decree of Equitable Distribution entered seven (7) years prior to the Bank's recordation of its mortgage.

■ We first note that the order appealed from is a final order and is, therefore, appealable.

The method and procedure by which competing lien creditors may litigate their claims to sale proceeds is established by Rule 3136, Pa.R.C.P. See *Concord–Liberty Savings and Loan Assoc. v. NTC Properties,* 454 Pa. 472, 312 A.2d 4 (1973); *Sklaroff v. Weiner,* 204 Pa.Super. 273, 203 A.2d 366 (1964); 4A Anderson Pa.Civil Practice, *Enforcement of Judgments* § 3136 (1962). Rule 3136(g) implicitly recognizes the right of appeal by any person aggrieved by the court's final disposition of exceptions to the sheriff's schedule of distribution. It authorizes the entry of an order that the sheriff invest the proceeds of sale "pending final disposition of the exceptions or an appeal therefrom." See 4A Anderson Pa.Civil Practice, supra at § 31336.8. It is clear that an appeal will lie from a final order sustaining or dismissing exceptions to a sheriff's schedule of distribution. [citations omitted].

*Metropolitan Federal Sav. and Loan Ass'n of Eastern Pa., Inc. v. Bailey,* 244 Pa.Super. 452, 458–59, 368 A.2d 808, 811 (1976). In the instant case, the court's order of October 9, 1996, directed "that the Sheriff invest $304,944.18 of the proceeds from the sale into a savings account ... pending final disposition of Plaintiff's Appeal from the September 16, 1996 Order in this matter." Therefore the order appealed from is final and the issues instantly raised are properly before us.

■ The longstanding rule in this Commonwealth is that a judgment continues as a lien against real property for five years and then expires unless revived. *Allied Material*

*Handling v. Agostini,* 414 Pa.Super. 175, 606 A.2d 923 (1992). Although a judgment may be revived after the five year period, its priority against intervening liens is lost. *Id.* It is undisputed in the case *sub judice* that appellee's lien was entered as a judgment on January 27, 1987, but was not revived until September 27, 1995, some seven and one half years later and that Mid–State recorded its mortgage lien on August 24, 1994, during the interim period after appellee's lien had expired but before it had been revived. Accordingly, because appellee did not timely file a writ of revival, her lien became subordinate as to Mid–State's subsequently filed mortgage lien.

Although the trial court recognized the rule requiring a judgment lien to be revived within five years, it determined that appellee's lien was not a "judgment" subject to the rule, despite the fact that the lien had been recorded in the judgment index of Clinton County. The court noted that the "lien imposed ... pursuant to the Equitable Distribution Order was recorded as a 'judgment' January 27, 1987." The court, however, went on to explain:

[T]he lien was a lawfully created obligation. The trial court is free to fashion a distribution award in whatever manner may be best suited to achieve a fair and just settlement according to the circumstances of each case. [footnote and citation omitted]. Pursuant to 23 Pa.C.S.A. § 3502(b) [footnote omitted] the court may impose a lien as security for the payment of this award. There is no provision under the Divorce Code which would require a court, in imposing such a lien, to record it in any manner save the filing of an Opinion and Order.

Although Mid–State would have us believe so, the mere fact that the Prothonotary and Solicitor chose to file the lien as a "judgment" does not in some manner transform the lien into something less than what it is: a lawful obligation imposed by the Court. Mid–State asks this Court, in essence, to ignore a valid Court Order. This we refuse to do.

"If the exceptant can produce evidence that he is equitably entitled to

priority, the order of payment of the proceeds of a foreclosure sale will be changed." [*Farmers Trust Co. v. Bomberger*, 362 Pa.Super. 92, 96, 523 A.2d 790, 792 (1987)].

Ms. Blesh has shown she has a valid, current claim to the proceeds of the Sheriff's sale. Mid–State has had both actual and constructive notice of the claim. Given Ms. Blesh's showing that she is equitably entitled to priority, the order of payment will be changed to reflect this.

We conclude that this was error. Because the case was decided on the briefs, no evidence was produced. Thus, the court decided the case on the temporal order in which the relevant decrees, judgments, deeds and mortgages were recorded. Based on this sequence of recordation, given appellee's failure to revive judgment, Mid–State's lien must take priority as a matter of law. *Allied Material Handling v. Agostini, supra.* There is no basis for concluding that equitable distribution orders supercede established law relating to priority of interest created by and preserved by settled rules relating to priority of claims. The lien was properly recorded in the Clinton County judgment index on the same date that appellee recorded the deed conveying her half interest in the marital real estate to her ex-husband. The lien was subject to the five year revival rule, with which appellee failed to comply.

Moreover, we disagree with the court's suggestion that entry of appellee's lien in the judgment index might transform the lien "into something less than it what it is." Since the lien is still valid but simply loses its priority under established rules governing liens reduced to judgment, the entry of judgment on the lien, had judgment been properly revived, would actually have given teeth to the underlying order of equitable distribution and would have protected appellee's interest in the property. Illustrative thereof, is the Divorce Code's express provision at 23 Pa. C.S.A. § 3502(e)(1):

(e) Powers of the court.—If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

(1) enter judgment[.]

Nonetheless, the trial court erroneously found that appellee's lien, by virtue of the trial court's broad power to fashion awards of equitable distribution, took priority. Although the Divorce Code grants broad equitable power to the trial courts and at 23 Pa.C.S.A. § 3502(b) provides that "[t]he court may impose a lien or charge upon property of a party as security for the payment of alimony or any other award for the other party[,]" nowhere does that statute provide that a lien so imposed is entitled to continuing priority without the need for further perfection or revival. To the extent the court determined that 23 Pa.C.S.A. § 3502(b) allows a lien imposed under an equitable distribution order, subsequently reduced to judgment, to be considered as a continuing encumbrance not subject to the rule requiring a judgment lien to be timely revived in order to retain its relative priority, we reverse.

■ The court also erred in determining that Mid–State had constructive notice of appellee's lien. The court held:

Mid–State must also be charged with constructive notice of the claim based upon the Equitable Distribution Order filed in 1986. The deed filed at Volume 302 page 374 conveys arguably valuable property from Ms. Blesh to Mr. Johnson for the sum of $1.00. The deed also recites that the parties were divorced May 24, 1985, and that the conveyance is pursuant to Court Order of Equitable Distribution. Constructive notice or knowledge has been defined as what a party "could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title...." [*Volunteer Fire Co. v. Hilltop Oil Co.*, 412 Pa.Super. 140, 150, 602 A.2d 1348, 1352 (1992) (citing *Lund v. Heinrich*, 410 Pa. 341, 348, 189 A.2d 581, 585 (1963))].

By the information recorded on the deed, Mid–State had knowledge of the equitable distribution. A review of the Equitable Distribution Order would have provided knowledge of the lien imposed by Judge Brown. If Mid–State then failed to follow up with inquiry of Mr. Johnson whether the obligation was satisfied, this failure cannot be charged to Ms. Blesh.

█ The court's standard of constructive notice places an unrealistic investigative burden on subsequent creditors who have searched the county recordations. Assuming *arguendo,* that the incidental mention of the order of equitable distribution in the deed required Mid–State to review the order, appellee failed to record the order of equitable distribution with the Clinton County recorder of deeds until September 14, 1994, approximately one month after Mid–State recorded its mortgage lien. Additionally, although appellee's lien was, appropriately recorded on the judgment index in 1987, that judgment was not timely revived. The definition of constructive notice in the present circumstances includes what a party "could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, *and also by what appeared in the appropriate indexes in the office of the recorder of deeds.*" *Lund v. Heinrich,* 410 Pa. at 346, 189 A.2d at 584 (1963) (emphasis added). At the time that Mid–State searched the title, neither the order of equitable distribution which imposed the lien, nor the judgment lien's revival, were recorded. Therefore, Mid–State could not have gained constructive knowledge of appellee's interest in the property by a prudent search of the appropriate indexes.[2] The standard of record search necessarily implicated by the trial court's disposition would place an undue and unrealistic burden on the record examiner to uncover an unrecorded order and scrutinize it for a lien, recorded or not, and to do so for a period in excess of accepted rules of judgment revival.

█ We also reject the determination that Mid–State had actual notice of the appellee's interest. The assertion of actual notice is dependent upon a presumption that there is a, duty to search beyond the revival period to discover unrevived judgments which is not the burden.

█ We turn finally to appellee's allegation that liens imposed pursuant to an order of equitable distribution, under 23 Pa.C.S.A. § 3502(b), represent a class of judicial liens not legislatively intended to be governed by the statutory provisions relating to the inception, duration, termination and revival of judgment liens. We disagree and preliminarily note:

> Judgment liens are a product of centuries of statutes which authorize a judgment creditor to seize and sell the land of debtors at a judicial sale to satisfy their debts out of the proceeds of the sale. The judgment represents a binding judicial determination of the rights and duties between the parties, and establishes their debtor-creditor relationship for all the world to notice when the judgment is recorded in a Prothonotary's Office. When entered of record, the judgment also operates as a lien upon all real property of the debtor in that county.

*Clairton Corp. v. Chicago Title Ins. Co.,* 438 Pa.Super. 488, 494, 652 A.2d 916, 919 (1995) (quoting *In re Upset Sale,* 505 Pa. 327, 334, 479 A.2d 940, 943 (1984)). "The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien." *Id.*

Further, judgment liens are governed by 42 Pa.C.S.A. § 4303(a) which provides, in pertinent part:

> Any judgment *or other order of a court of common pleas for the payment of money* shall be a lien upon real property on the

---

**2.** Given the five year revival rule, logic dictates that a prudent search of the Clinton County judgment index on August 24, 1994 would require one to look back no further than August 24, 1989. In the instant case, because appellee's lien was reduced to judgment in January, 1987, and because appellee did not revive that judgment until September, 1995, Mid–State's search of the judgment index in August, 1994, did not disclose the existence of appellee's lien.

conditions, to the extent and *with the priority provided by statute* or prescribed by the General Rule adopted pursuant to Section 1722(b) (relating to enforcement and effect of orders and process) when it is entered of record in the office of the clerk of the court of common pleas of the county where the real property is situated ...

42 Pa.C.S.A. § 4303(a) (emphasis added). A judgment lien becomes dormant after five years and a writ of revival must be filed within that prescribed period or the judgment lienholder may lose her lien priority. Judgment Lien Law of 1947, 12 P.S. §§ 878, 880.[3]

Despite the foregoing which confirms the power and priority a properly perfected and maintained judgment lien will convey to its holder, appellee argues that her lien against the property was not "merely" a judgment lien. Rather, despite the fact the instant order in equitable distribution can be viewed as "an order of a court of common pleas for the payment of money," appellee argues that the order and award of equitable distribution in the instant matter "represented more than a mere money judgment, it represented the court ordered distribution of marital property pursuant to the broad equitable powers granted the trial court by the Pennsylvania Divorce Code." Appellee suggests that because her lien was imposed under the divorce code and because "there is no limitation contained within 23 Pa.C.S.A. § 3502(b) regarding the duration of the lien," that her lien should be granted, in effect, a super-priority which trumps all subsequent liens or charges against the property until such time that her former husband pays the equitable distribution award in full, if ever.

Appellee, in essence, asks us to recognize a new category of judicially created liens. This we will not do. We cannot agree, as will be further discussed below, with appellee's interpretation that a lien imposed pursuant to the divorce code, has greater duration and priority than any other judicially or legally created lien merely because the divorce code statute authorizing a court to impose such a lien fails to specifically enumerate any limitations on the lien's priority or duration. Additionally, in the instant matter, appellee's lien imposed pursuant to the divorce code was, in fact, reduced to judgment. The lien was, therefore, subject to the rules regarding judgment liens, and any suggested distinction between appellee's lien and a suggested new class of liens, on the facts of this case, is not pertinent.

Nonetheless, appellee argues somewhat cryptically that if her

lien or charge were nothing more than a judgment lien governed by 42 Pa.C.S.A. § 4303(a), the express provision of 23 Pa. C.S.A. § 3502(b) would be redundant because under such a construction the language of 23 Pa.C.S.A. § 3502(b) would be superfluous since 42 Pa.C.S.A. § 4303(a) would control to convert any monetary award into a lien against real property upon entry of the equitable distribution award in the judgment index. Such an interpretation would be *contrary to the* rule of statutory construction that the legislature is presumed not to have intended its laws to contain language that is mere surplusage and without import. *See,* 1 Pa. C.S.A. § 1922. *See, e.g., Commonwealth v. Mack Bros. Motor Car Co.,* 359 Pa. 636, 59 A.2d 923, 925 (1948) ("[t]he legislature cannot, however, be deemed to intend that language used in a statute shall be superfluous and without import.").

It is well-settled that statutes or parts of statutes which relate to the same persons or things or the same classes of persons or things must be construed together, insofar as possible, as one statute. *Alfred M. Lutheran Distributors, Inc. v. A.P. Weilersbacher, Inc.,* 437 Pa.Super. 391, 650 A.2d

---

**3.** "Although the Judgment Lien Law has been officially repealed, it still governs insofar as it does not conflict with any other rules. In 1978, the General Assembly passed the Judiciary Repealer Act of April 28, 1978, which repealed the Judgment Lien law 'to the extent that the law is inconsistent with duly promulgated general rules of procedure. 42 Pa.Cons.Stat.Ann. § 20002(a)[1257] (Purdon 1982). However, since no current rule of procedure regulates the duration and scope of judgment liens, sections 878 and 880 continue as part of the common law of Pennsylvania.' " *Allied Material Handling v. Agostini, supra,* at 179 n. 3, 606 A.2d at 925 n. 3 (quoting *Hertzog v. Jung,* 363 Pa.Super. 439, 444 n. 2, 526 A.2d 425, 427 n. 2 (1987)).

83 (1994), *appeal denied* 540 Pa. 627, 658 A.2d 791 (1995). Additionally, the law of this Commonwealth provides that:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is unreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933. Moreover, this court must presume that the legislature did not intend an absurd or unreasonable result. *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996). Bearing in mind the foregoing we proceed to appellee's argument.

Appellee argues that if a lien created pursuant to an order of equitable distribution under 23 Pa.C.S.A. § 3502(b), by virtue of being an order of court for the payment of money, automatically becomes a judgment lien when it is entered of record pursuant to 42 Pa.C.S.A. § 4303(a), then the statute providing for the imposition of a lien pursuant to an order of equitable distribution is mere surplusage. Appellee's argument, seemingly meritorious at first blush, must fail. First, not every order of equitable distribution constitutes an order for the payment of money. Nor does every order of equitable distribution seek to impose a lien against real property. A lien imposed under an order for equitable distribution may be assessed against personal property as well. Without the express dictate of 23 Pa.C.S.A. § 3502(b), there would be no statutory authority for a court, in its discretion, to impose a lien against real or personal property to secure its award. Thus, the statute which permits the court to do so cannot be deemed mere surplusage compared to the judgment lien statute, the exclusive subject of which is liens against real property.

Second, construing the statutes together, we find that there is no irreconcilable conflict between a statute which allows a court to impose a lien against real property indirectly by entering an order for the payment of money, i.e., 42 Pa.C.S.A. § 4303(a), and a statute which allows a court to impose such a lien directly, i.e., 23 Pa.C.S.A. § 3502(b). In either case, a lien is imposed, and the court's award secured.

Finally, because a more absurd or unreasonable result could not lie from the juxtaposition of the two statutes, we cannot presume that the legislature intended, by the enactment of 23 Pa.C.S.A. § 3502(b), for a lien imposed against real property under that statute to have a continuing super-priority over all other judicially and legally created liens. Indeed, in any subsequent lien priority dispute, the proper order of priorities as established by law must prevail. There is no specific statutory language or other authority to support appellee's suggestion that her lien is entitled to greater priority than that afforded Mid–State's lien merely by virtue of the fact that her lien was imposed pursuant to an equitable distribution award.

For the foregoing reasons, we reverse the order of the trial court and remand with instructions for the court to direct the sheriff to disburse funds in accordance with this opinion.

Reversed and remanded. Jurisdiction relinquished.

TAMILIA, J., files Dissenting Opinion.

TAMILIA, Judge, dissenting:

I respectfully dissent. I would affirm the trial court's Order of September 16, 1996, which granted the exceptions of appellee, Pamela K. Blesh, to the Sheriff's Schedule of Proposed Distribution. The real property in question was the subject of a specific Order of equitable distribution and was, therefore, held in custodia legis, or under the wardship of the court, pending compliance with that Order. Moreover, appellant, Mid–State Bank and Trust Company, had constructive notice of the equitable distribution Order, such that appellee was entitled to priority in the distribution of the proceeds of the sheriff's sale.

The facts of this case can be briefly summarized as follows. On March 19, 1986, the divorce court entered an equitable distribution Order, which awarded the marital real estate and flour mill business to appellee's former husband and required husband to pay appellee the sum of $385,381.09 plus interest, in equal monthly installments over a fifteen-year period. To secure the payments to appellee, the court imposed a lien against the real estate distributed to husband. On January 27, 1987, the conveyance of the marital real estate was recorded with the Clinton County Recorder of Deeds, and the lien was reduced to judgment and entered in the Clinton County Judgment Index. After the judgment expired, appellee's former husband used the real property as collateral for a $1.5 million loan from Mid-State bank. When he defaulted on the loan, the property was sold at sheriff's sale. Appellee thereafter filed exceptions to the Sheriff's Schedule of Proposed Distribution, which were granted by the trial court.

In reversing the trial court, the majority fails to consider the doctrine of in custodia legis. Although the trial court did not address this doctrine, it is well settled that if the result is correct, this Court may affirm the trial court's decision on any ground. *Schimp v. Allaman,* 442 Pa.Super. 365, 659 A.2d 1032 (1995). In *Klebach v. Mellon Bank, N.A.,* 388 Pa.Super. 203, 565 A.2d 448 (1989), the court stated: "The longstanding rule in this Commonwealth is that property subject to an order of court is *in custodia legis,* or under the wardship of the court, pending compliance with the order." *Id.* at 211, 565 A.2d at 451. Since the property in this action was the subject of a specific equitable distribution Order, it remained in custodia legis pending husband's compliance with the divorce court's Order. As a result, appellee's claims stemming from the equitable distribution Order should take precedence in the distribution of the proceeds from the sheriff's sale. The validity of this doctrine to some extent has been incorporated into the Divorce Code, 23 Pa.C.S. § 3323, **Decree of court,** as follows:

(f) **Equity power and jurisdiction of the court.**—In all matrimonial causes, the court shall have full equity power and jurisdiction *and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.*

(Emphasis added.) Moreover, section 3505, **Disposition of property to defeat obligations,** protects a party from fraudulent disposition or encumbrance of property prior to a decree of equitable distribution. It would appear that if a decree has been entered and there is a continuing obligation under the decree to effectuate equitable distribution, any encumbrance of this property subject to the distribution decree, over which the court has continuing jurisdiction, can also be divested.

The soundness of applying the doctrine of in custodia legis is amply demonstrated by the record in this case. The divorce court's equitable distribution Order of March 19, 1986, required appellee's former husband to pay her the sum of $385,381.09 plus interest; however, despite appellee's repeated efforts to secure payment, over $304,000 remained unpaid as of March of 1995. Such a result defeats the scheme of equitable distribution and allows appellee's former husband to openly flout the divorce court's Order. A court must be able "to carry out the equitable distribution order and give the parties the benefits they were entitled to under the equitable distribution order." *Lowenschuss v. Lowenschuss,* 453 Pa.Super. 340, 342, 683 A.2d 1214, 1216 (1996).

The undisputed purpose of equitable distribution is to "[e]ffectuate economic justice between parties who are divorced or separated ... and insure a fair and just determination and settlement of their property rights." 23 Pa.C.S. § 3102, **Legislative findings and intent,** (a)(6). Although the doctrine of in custodia legis has to-date only been applied to property pending the outcome of equitable distribution proceedings, the equitable distribution Order of March 19, 1986, necessitated

continuing court involvement by specifying equal monthly payments over an extended period of time. The authority to do so which was implicit in the Order of distribution can be found in 23 Pa.C.S. § 3104, **Bases of jurisdiction:**

> (a) **Jurisdiction.**—The courts shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages and shall determine, *in conjunction with any decree granting a divorce or annulment, the following matters, if raised in the pleadings, and issues appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof.*
>
> (1) The determination and disposition of property rights and interests between spouses....

(Emphasis added.)

This Court previously has applied the doctrine of in custodia legis to marital property, which creditors executed against, long after the parties filed for divorce. *Keystone Sav. Ass'n v. Kitsock,* 429 Pa.Super. 561, 633 A.2d 165 (1993). Moreover, Pennsylvania courts have allowed modification of *final* Orders of equitable distribution, "in order to effectuate the court's intention in distributing the marital property." *Lowenschuss, supra* at 342, 683 A.2d at 1216. As a result, it is entirely proper for this Court to apply the doctrine of in custodia legis to property that is the subject of a final Order of equitable distribution with which the parties have not complied.

Appellant claims that if a final decree of equitable distribution can create a perpetual lien entitled to continuing priority, there will be "serious repercussions." (Appellant's Brief, p. 14.) However, I fail to see any difficulties caused by such a lien, when appellant had constructive notice of the Order of equitable distribution. With regard to constructive notice, the Pennsylvania Supreme Court 90 years ago stated the following:

> The general rule is that where a purchaser holds under a conveyance, and is obliged to make out his title through that deed, or through a series of prior deeds, *he is charged with constructive notice of every matter connected with or affecting his title, which appears by description of parties, by recital, by reference, or otherwise, on the face of any deed, or upon any public record,* which forms an essential link in the chain of instruments through which he takes title or liens which affect the same.

*Volk v. Eaton,* 219 Pa. 649, 69 A. 91 (1908) (emphasis added). Furthermore, "[b]ecause constructive notice is not limited to instruments of record, a subsequent purchaser may be bound by constructive notice of a prior unrecorded agreement." *Long John Silver's, Inc. v. Fiore,* 255 Pa.Super. 183, 190, 386 A.2d 569, 573 (1978). A subsequent purchaser has a duty to inquire "of persons in possession *or others who the purchaser reasonably believes know such facts." Id.* (emphasis added).

In this case, the deed to the marital real estate was recorded properly and explicitly referenced the unrecorded court Order of equitable distribution, as well as the appellee's divorce on May 24, 1985. Appellant had record notice of the existence of the Order of equitable distribution and, therefore, had a duty to inquire as to its contents. "[E]videntiary incompleteness should not be confused with a lack of notice of the existence of the claim itself." *Powell on Real Property,* 14:82.02[1][d][ii], at 82–50 (1996) (Matthew Bender & Co., Inc.). Since reasonable inquiry would have revealed the validity of appellee's lien, appellant must be charged with constructive notice of appellee's claims.

Through appellee's filing in the Clinton County Judgment Index, appellant had additional constructive notice of the lien. The majority states: "Given the five year revival rule, logic dictates that a prudent search of the Clinton County judgment index on August 24, 1994 would require one to look back no further than August 24, 1989." (Majority Opinion, p. 1192 n. 2.) Contrary to the majority's Opinion, however, logic dictates no such result. As appellee correctly points out, "There are many reasons ... for a diligent title searcher to search the judgment index for more than the five (5) year time period suggested by the appellant." (Appellee's Brief at 23–24.) These reasons include federal tax liens, which are valid until paid, and

municipal claims, which have a life span of twenty (20) years. Since a reasonably diligent title search would have revealed the existence of appellee's unsatisfied judgment, appellant must be deemed to have had constructive notice of appellee's lien.

Because the real property in question was the subject of a specific court Order of equitable distribution and because appellant had constructive notice of that Order, I would affirm the Order of the trial court.