### In re David ZAMPATTI and Karen Zampatti, Debtors.

### David Zampatti and Karen Zampatti, Movants,

### v.

### Scenery Hill Development, Inc., Vanessa Fuchs, George Kustenow, Allen Novosel, Zeppi Oil & Gas Company, Inc., Robert Housley, Marsh Capital Investors, and Ciolli Motors, Inc., Respondents.

### No. 02–31596BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 23, 2003.

CLIENT agrees to pay fees to be determined as follows: ..."

Donald R. Calaiaro, Pittsburgh, PA, for Movants.

George H. Hoffman, Pittsburgh, PA, for Defendant Scenery Hill Development.

Peter J. Payne, Turtle Creek, PA, for Defendant Marsh Capital Investors.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Scenery Hill Development, Inc., Allen Novosel and Thomas Michalek all have liens against real property debtors own. We have been called upon to determine which of them has the lien that is second in position only to the lien of the first mortgagee.

Each of the lienholders claims to have the second position lien ahead of the others.

We conclude for reasons presented in this memorandum opinion that the lien of Allen Novosel occupies the second position and is ahead of the liens of Scenery Hill and Michalek.

### —FACTS—

Debtors own as tenants by the entirety real property located in Jefferson Hills, Allegheny County, Pennsylvania. The property is subject to various liens.

For instance, debtors granted a first mortgage against the property on December 27, 1988, to Atlantic Financial Federal, the predecessor to Interbay Funding, LLC. The mortgage was recorded on December 29, 1988. The primacy of its mortgage lien is not in dispute here.

Scenery Hill has a judgment lien against the property. On May 2, 1991, it confessed judgment against debtors in the Court of Common Pleas of Allegheny County, Pennsylvania, in the amount of $125,927.14.

Novosel also has a judgment lien against the property. On August 18, 1994, he confessed judgment against debtors in the same court in the amount of $617,733.82. When debtors brought a petition to open or strike the judgment that same day, the state court issued an order dated August 18, 1994, wherein a rule was issued requiring Novosel to show cause why the judgment should not be stricken. The order also stayed all proceedings on the judgment until further order of court.

On August 11, 1998, approximately four years after he had confessed judgment against debtors, Novosel filed a praecipe

for a writ of revival of his confessed judgment against debtors. A writ of revival issued shortly thereafter.

On September 21, 1998, approximately five weeks after Novosel's praecipe for a writ of revival was filed, Michalek recorded two mortgages against debtors' real property. The total amount of the mortgages was approximately $56,000.

On August 11, 1999, more than seven years after it initially had confessed judgment against debtors, Scenery Hill filed a praecipe for a writ of execution. The named garnishees were Scenery Hill and Commercial Excavating, Inc.

Interbay Funding, holder of the first position mortgage lien against debtors' property, initiated a foreclosure action against debtors and their real property on September 15, 2002.

Debtors filed a voluntary joint chapter 7 petition on October 23, 2002, thereby staying the mortgage foreclosure action. The real property located in Jefferson Hills was listed as an estate asset with a declared value of $99,100. Mortgagees Interbay Funding and Michalek were listed as having undisputed secured claims by virtue of their mortgages. Scenery Hill, Novosel, and other holders of judgment liens were listed as having disputed general unsecured claims in varying amounts.

On February 4, 2003, debtors brought a motion pursuant to § 522(f) of the Bankruptcy Code to avoid the judicial liens of Scenery Hill, Novosel and others. Neither Interbay Funding nor Michalek was named as a respondent to the motion.

Debtors were granted a discharge on March 21, 2003.

An evidentiary hearing on debtors' motion to avoid the above judicial liens was conducted on June 30, 2003. Respondents Fuchs, Kustenow, Zappi Oil & Gas Co., Housley and Ciolli Motors did not respond to debtors' motion and did not participate in the hearing. Respondents Scenery Hill, Novosel and Marsh Capital responded to the motion and participated in the hearing. Michalek also responded to debtors' motion and actively participated in the evidentiary hearing even though he was not named as a respondent.

The following consent order was issued after the evidentiary was concluded:

The liens of the Respondents and Thomas Michalek impair the debtors' exemption. The parties agree that the value of the Property is $130,000. There is $40,000 in value which will not be avoided. The lienholders and the Mortgagee will file briefs as to which lienholder is entitled to the second lien position.

The above consent order appears to have "Janus-type" qualities. Looking at the first sentence, it appears the parties desire a review of lien avoidance. The second sentence is merely descriptive, while the third sentence seems to focus in on lien priority rather than lien avoidance. The final sentence seems to be the parties' prayer for relief and requests we decide who has the second priority. We interpret the order as above stated.

Counsel to debtors, counsel to Scenery Hill and Novosel, counsel to Marsh Capital, and Michalek all signed the hand-written consent order.

Instead of filing a post-hearing brief, Marsh Capital reached agreement with Michalek whereby it agreed to share the proceeds with Michalek should Michalek turn out to be the holder of the second position lien against debtors' property. We were informed in the post-hearing brief submitted on behalf of Scenery Hill and Novosel that they had an "internal understanding" between themselves concerning distribution of any amount they

might receive in the event one of them prevailed.

## —DISCUSSION—

The issue *sub judice* is which of the three above lienholders—i.e., Scenery Hill, Novosel, or Michalek—has the second position lien under Pennsylvania law behind first position lienholder Interbay Funding. Respondents Fuchs, Kustenow, Zappi Oil & Gas Co., Housley and Ciolli Motors did not respond to debtors' motion to avoid their judgment liens. They evidently concede that their liens are avoidable in accordance with § 522(f)(1) of the Bankruptcy Code and further concede that they do not occupy the second lien position under Pennsylvania law behind the lien of Interbay Funding. While respondent Marsh Capital Investors initially responded to debtors' motion, it no longer is interested in participating in this matter in light of its agreement with Michalek.

Michalek asserts in his post-hearing brief that, under Pennsylvania law, he has the second-position lien immediately behind the lien of Interbay Funding. Michalek, as a secondary argument, opines that he should prevail here under § 522(f)(1) because his is a non-avoidable *consensual* lien whereas the liens of Scenery Hill and Novosel are *judicial* in nature and are avoidable pursuant to § 522(f)(1).

Michalek's assertion that he we should look to § 522(f)(1) to decide whose lien is in the second position is without merit. The consent order of June 30, 2003, which Michalek signed along with Scenery Hill and Novosel, stated we were to determine "which lienholder is entitled to the 2d lien position". We understand from this language that this court is to determine only the relative priority of the liens of Scenery Hill, Novosel and Michalek. A determination as to lien priority must be made under Pennsylvania law.

Section 522(f) provides no basis for determining relative priorities of competing liens without regard to their type or nature but instead provides a basis for avoiding certain liens depending on their type or nature.

Although Scenery Hill's lien initially was "first in time" among the three liens at issue here, its lien does not now take priority over Michalek's liens. To the contrary, Michalek's liens are prior to its lien. Scenery Hill's lien had expired and was not revived before Michalek's liens arose or at any time thereafter. The action Scenery Hill took with respect to its lien occurred after Michalek had recorded his mortgage liens.

A judgment lien serves to prevent a debtor from subsequently encumbering or disposing of real property the debtor owns so as to divest the effect of the judgment. It also serves to prevent subsequent lienholders from taking action against the property to satisfy a debt owed to it by the debtor without first paying off prior liens. *Shearer v. Naftzinger*, 560 Pa. 634, 637, 747 A.2d 859, 861 (2000).

Under the law of Pennsylvania, a judgment continues as a lien against real property for a period of five years, after which it automatically expires unless it is revived. *Mid–State Bank & Trust Co. v. Globalnet International, Inc.*, 710 A.2d 1187, 1190 (Pa.Super.1998), *aff'd*, 557 Pa. 555, 735 A.2d 79 (1999). While a judgment lien may be revived even after it has expired, any priority it had against intervening liens prior to expiration is lost in the interim. *Shearer*, 560 Pa. at 637 n. 1, 747 A.2d at 860 n. 1.

When a writ of revival issues, the Prothonotary is required to index it against each named defendant in the judgment index. Pa. R.C.P. 3027(a), 42 Pa.C.S.A.

Once it is indexed, the writ becomes a lien upon all real property owned at that time by any defendant against whom the original judgment was entered. Pa. R.C.P. 3027(b), 42 Pa.C.S.A. The resulting lien continues for a period of five years from the date on which it was indexed. Pa. R.C.P. 3027(C), 42 Pa.C.S.A.

A proceeding to revive the lien of a judgment may be commenced by filing with the prothonotary of the county in which the judgment was entered either a praecipe for a writ of revival or an agreement to revive the judgment. Pa. R.C.P. 3025, 42 Pa.C.S.A. Scenery Hill did neither of these but instead filed a praecipe for a writ of execution on August 11, 1999, more than three years after its original judgment lien had expired and some eleven months after Michalek's mortgage liens had arisen. As a result, Michalek's mortgage liens take priority over Scenery Hill's judgment lien because the latter lien had expired before the former liens arose. Scenery Hill's filing of a praecipe for a writ of execution some eleven months after Michalek's mortgage liens were duly recorded does not change this outcome.

Michalek testified at the evidentiary hearing on debtors' motion to avoid judicial liens that he was aware of Scenery Hill's original judgment lien when he recorded the two mortgages and his liens arose. Seizing upon this, Scenery Hill asserts that its judicial retains its priority over Michalek's judicial liens. As authority for this assertion, Scenery Hill cites to *In re 250 Bell Road,* 479 Pa. 222, 388 A.2d 297 (1978).

This assertion is without merit for a number of reasons.

Scenery Hill, we previously noted, did not file a praecipe for a writ of revival before Michalek's liens arose. It instead filed a praecipe for a writ of execution more than three years after its judgment lien had expired and some eleven months after Michalek's mortgage liens arose. Scenery Hill has cited to no authority for the proposition that a writ of execution issued under such circumstances revives the judgment lien and "relates back" to restore the priority it had over other liens before it expired.

Moreover, Scenery Hill's reliance upon *In re 250 Bell Road* is misplaced. The court therein stated that the indexing of a writ of execution is not essential to the revival of a judgment where there is actual knowledge of the *writ* by a subsequent lienholder. 479 Pa. at 226 n. 1, 388 A.2d at 299 n. 1. The context in which the court spoke of "actual knowledge of the writ" makes it clear that it was referring to a writ of *execution*. Michalek undoubtedly had no knowledge of the writ of execution as it did not issue until some eleven months after he had recorded his mortgages.

Although Michalek's liens take priority over Scenery Hill's lien, Novosel's lien takes priority over Michalek's and consequently is second in priority to the lien of Interbay Funding.

Novosel confessed judgment against debtor on August 18, 1994. When debtors immediately thereafter petitioned to have the judgment opened or stricken, the state court issued an order on August 18, 1994. Among other things, it stayed any proceedings in the matter until further order of court.

■ The filing of debtors' petition to open or strike the judgment did not affect or impair the lien that arose when Novosel confessed judgment against them. The mere filing of a petition to open or strike a judgment does not impair the judgment lien. *Macioce v. Glinatsis,* 361 Pa.Super. 222, 225, 522 A.2d 94, 96 (1987).

■ The lien of a judgment is not impaired even when the judgment is opened. *Id.* The lien is affected, however, if a judgment is stricken. The judgment is annulled and the parties are left as if no judgment had been entered. *Resolution Trust Corp. v. Copley Qu–Wayne Associates,* 546 Pa. 98, 107, 683 A.2d 269, 273 (1996).

Nothing in the record of this case indicates whether the above stay was ever vacated or modified or whether debtors' petition was ever adjudicated. If either of these occurred, the parties have not so informed this court. Based on the just-recited authority, we have to assume that the judgment lien Novosel obtained in August of 1994 was valid and remains so to the present time.

On August 11, 1998, approximately four years after Novosel's initial judgment was entered and some five weeks before Michalek's mortgage liens arose, Novosel filed a praecipe for a writ of revival with the prothonotary of the county in which debtors' real property is located. The lien that was revived continued for a period of five years from the date on which it was indexed—until August 11, 2003. Pa. R.C.P. 3027(C), 42 Pa.C.S.A.

We conclude in light of the foregoing that Novosel's judgment, as revived on August 11, 1998, was prior to Michalek's mortgage liens when debtors filed their chapter 7 petition as well as on June 30, 2003, when the evidentiary hearing on debtors' motion to avoid judicial liens took place.

■ Michalek attempts to avoid this conclusion by asserting that Novosel's filing of a praecipe for a writ of revival violated the August 18, 1994, order of court staying all proceedings on the initial confessed judgment until further order of court. From this Michalek obviously would have us infer that the writ of revival

that issued on August 11, 1998, was null and void. If this is the case, it supposedly would follow that Novosel's lien had elapsed as of August 18, 1999, at which time Michalek's lien moved ahead of Novosel's lien.

This argument is without merit.

To begin with, we do not know whether the stay issued on August 18, 1994, remained in effect when Novosel filed a praecipe for a writ of revival on August 11, 1998. There is nothing in the record of this case, we noted previously, indicating whether the stay was still in effect or had been vacated or modified by then. Without this information, we are not in a position to conclude that Novosel's praecipe for a writ of revival violated the stay.

Even if the stay was still in effect at the time and Novosel's praecipe for a writ of revival violated the stay, it is not obvious that the ensuing writ of revival was null and void as a consequence. Michalek cited to no Pennsylvania authority for the proposition that the ensuing writ of revival was null and void and that Novosel's judgment lien expired in August of 1999. The cases to which Michalek cites involve violations of the automatic stay in bankruptcy and shed no light on the issue presently under discussion.

Finally, even if the above stay was still in effect and debtors' petition to open or strike Novosel's confessed judgment was still pending when the writ of revival issued in August of 1998, Novosel's initial judgment was preserved while debtors' petition to open or strike the judgment was pending. *Macioce,* 361 Pa.Super. at 225–26, 522 A.2d at 96 (citing to Pa. R.C.P. 2959(C), 42 Pa.C.S.A.). Were it otherwise, Novosel would have been in the intolerable position of not being able to take steps to revive his judgment lien as its expiration drew near because debtors' petition to

open or strike the initial judgment had not been resolved by then.

We conclude in light of the foregoing that the lien of Novosel is in second position of priority behind the lien of Interbay Funding.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this *23rd* day of *October,* 2003, in accordance with the preceding memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the lien of Allen Novosel against debtors' real property located in Jefferson Hills, Pennsylvania, is second in priority only to the lien against said property of Interbay Funding. Novosel's lien is ahead of the liens against the property of Thomas Michalek and Scenery Hill Development, Inc.

It is **SO ORDERED.**