J-S01012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIE L. CHAVANNES AND MARVIN COMOND | : | No. 661 MDA 2021 |
| | : | |
| | : | |
| APPEAL OF: MARVIN COMOND | : | |

Appeal from the Order Entered April 14, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
13 15945

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                     **FILED MARCH 02, 2022**

Marvin Comond ("Appellant") appeals from the April 14, 2021 order denying his petition to strike the *praecipe* for writ of revival filed by plaintiff First American Title Insurance Company ("First American").  We affirm.

We glean the following background from the certified record.  In 2006, Appellant's father, Robert Comond ("Mr. Comond"), filed suit in New York regarding a fraudulent land deal in Brooklyn, New York, and an alleged forgery on a power of attorney.  Mr. Comond named several defendants, including Golden Grand Developers LLC ("Golden Grand"), Appellant, and Marie Chavannes, who is Mr. Comond's former wife and Appellant's mother.  Pursuant to a settlement agreement, First American agreed to pay Mr.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Comond on behalf of its insured, Golden Grand, as well as all other co-defendants except Appellant and Ms. Chavannes. In return, Mr. Comond assigned his money-damage fraud claim against Appellant and Ms. Chavannes to Golden Grand, who in turn assigned it to First American. In 2013, a New York court granted summary judgment in favor of First American and against Appellant and Ms. Chavannes based upon the fraud claims initially brought by Mr. Comond, holding Appellant and Ms. Chavannes jointly and severally liable.

On June 27, 2013, First American domesticated the New York judgment in Berks County, Pennsylvania. Shortly thereafter, Ms. Chavannes filed for bankruptcy and the judgment was automatically stayed.[1] Additional proceedings were placed on hold due to the pendency of various appeals and Ms. Chavannes's purported health issues. At a November 2019 status conference, Appellant notified First American that Ms. Chavannes had died. First American requested a copy of her death certificate and obituary as proof of her passing, but Appellant never provided those. First American subsequently asked Appellant to notify it upon the opening of an estate for Ms. Chavannes as it was a creditor entitled to file notice of a claim against her estate. As with the requested proof of death, Appellant never complied.

---

[1] Execution of the judgment was also stayed during the pendency of appeals filed by Appellant and Ms. Chavannes in the New York courts. Ultimately, the appeals court affirmed the order of the lower court and the Court of Appeals of New York dismissed the subsequent motions seeking leave to appeal. **First Am. Title Ins. Co. v. Chavannes**, 149 N.E.3d 434 (N.Y. 2020).

In August 2020, after having received no proof of death or notice of the opening of an estate, First American filed the underlying *praecipes* for a writ of revival against Appellant and Ms. Chavannes. On September 22, 2020, Appellant filed the underlying petition to strike. Therein, he alleged that service of process was not properly made as to Appellant and, as described by the trial court, that First American

> domesticated an unlawful foreign judgment from New York to Berks County, Pennsylvania and that in the last seven years, . . . made no attempt to execute on the judgment. [Appellant] contend[ed] that [First American's] last day to effectively maintain priority of the lie[n] was June 27, 2018,[ which was five years after the judgment was domesticated,] and by the time of [Ms. Chavannes's] death, the judgment had lapsed for fourteen months. [Appellant] submitted that [First American wa]s barred from trying to revive the lien and that [the] action to revive it was made in bad faith because [First American] had knowledge of [Ms. Chavannes's] death.

Trial Court Opinion, 7/1/21, at 2. Following off-the-record argument, the trial court denied Appellant's petition. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant lists the following issues for our review:

1. Whether the trial court has subject matter jurisdiction to revive a lien against a deceased party without a *scire facias* being issued to the deceased estate?

2. Whether the trial court has personal jurisdiction to revive a lien against a deceased party?

3. Whether the trial court erred as a matter of law by reviving a lien against a deceased party?

- 3 -

4. Whether the trial court erred as a matter of law without making an inquiry about the decease[d] party?

5. Whether the trial court erred as a matter of law without the defendant's being properly served with the issued writ by the Prothonotary?

6. Whether the trial court erred as a matter of law by allowing the Prothonotary to serve the issued writ to defendant[']s attorney of record who retired from the practice of law since June 2019?

7. Whether the trial court erred as a matter of law in denying defendant[']s petition to strike plaintiff[']s writ despite plaintiff[']s failure to properly name all the defendants prior to the expiration of the lien?

8. Whether the trial court erred as a matter of law by allowing plaintiff to serve the defendant and not his counsel of record with a defective writ.. . . that wasn't signed by the Prothonotary and didn't provide defendant with notice of his rights?

9. Whether the trial court erred as a matter of law by conducting the April 6, 2021 hearing off the record?

10. Whether a foreign judgment rendered in violation of defendant's 14th amendment right for due process is entitled to full faith and credit?

Appellant's brief at 5-6 (unnecessary capitalization omitted).

Notwithstanding the above, Appellant divides his argument section into six parts, which do not readily correspond with these ten issues. While this technically violates our rules of appellate procedure, we decline to dismiss as we can discern Appellant's arguments and are satisfied they were preserved in his Rule 1925(b) statement. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"); Pa.R.A.P. 2101 (stating that briefs "shall conform in all material respects with

the requirements of these rules" and that "if the defects are in the [appellant's] brief . . . and are substantial, the appeal . . . may be quashed or dismissed").

Upon examination, Appellant essentially challenges (1) the trial court's jurisdiction to revive the lien, (2) the service of the writ to revive, and (3) the New York judgment's entitlement to full faith and credit in this Commonwealth.[2] Appellant's challenges present pure questions of law, and

_____

[2] Appellant also challenges the trial court's decision to hold the April 6, 2021 oral argument off the record. Appellant's brief at 14-18. Appellant raised this claim for the first time in his Pa.R.A.P. 1925(b) statement, noting that when Appellant asked the trial court why the matter was being held off the record, the trial court responded that it did not want to clutter the record. The trial court offered the following response in its Rule 1925(a) opinion:

> This issue is a fallacy. This court heard argument over the legal issue of the validity of the judgment. There was not testimony taken, despite [Appellant's] incorrectly calling the proceeding a hearing. It was an argument which this court does not want recorded, because it is a waste of the court reporter's time and expense. [Appellant's] footnote on this issue is misleading. This court never "requests" to have hearings off the record because "it does not want to clutter the record." The proceeding in this case consisted of argument on the law, not findings of fact.

Trial Court Opinion, 7/1/21, at 8-9. Significantly, Appellant has not directed us to where he preserved an objection to the decision to hold argument off the record, either orally or via a written motion, and our review of the certified record has revealed none. Therefore, the matter is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if not waived, Appellant has failed to cite any legal authority for the proposition that he was entitled to a transcript of the argument proceeding. More importantly, he cannot demonstrate that he was prejudiced as no
*(Footnote Continued Next Page)*

- 5 -

thus our standard of review is *de novo* and our scope of review is plenary. *See Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008).

"The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien." *Mid-State Bank & Tr. Co. v. Globalnet Int'l, Inc.*, 710 A.2d 1187, 1192 (Pa.Super. 1998) (citation omitted). "[A] writ of revival of a judgment lien does nothing more than preserve the judgment creditor's existing rights and priorities." *Shearer v. Naftzinger*, 747 A.2d 859, 861 (Pa. 2000).

Generally, an action for revival must be commenced within five years. 42 Pa.C.S. § 5526. "The longstanding rule in this Commonwealth is that a judgment continues as a lien against real property for five years and then expires unless revived. Although a judgment may be revived after the five[-]year period, its priority against intervening liens is lost." *Mid-State Bank*, *supra* at 1190 (citations omitted); *see also Shearer*, *supra* at 860 n.1 ("The

_____

testimony was taken, no evidence was presented, and the trial court, contrary to Appellant's argument, provided its rationale for denying Appellant's petition to strike in its Rule 1925(a) opinion. To wit, Appellant based his petition to strike on the following grounds: (1) service of process was not properly made; (2) the judgment lien had lapsed; and (3) the judgment was not entitled to full faith and credit. In its opinion, the court provided its rationale for why it found each of those grounds meritless. *See* Trial Court Opinion, 7/1/21, at 7-9. Based on the foregoing, even if not waived, we would conclude that the trial court did not abuse its discretion in deciding to hold oral argument on Appellant's petition off the record.

judgment lien may nonetheless be revived after the five-year statute of limitations period for revival, however its priority against intervening liens, if any, is lost."); Pa.R.C.P. 3027(b)(2) Note ("The priority of the lien is preserved only if the *praecipe* or the agreement is filed within the five-year period prescribed by these rules.").

Appellant raises three arguments in support of his contention that the court was without jurisdiction to consider the writ of revival: (1) the writ was filed after Ms. Chavannes had died; (2) the writ was filed beyond the five-year period; and (3) Ms. Chavannes was an indispensable party who could not be joined because she was deceased. Appellant's brief at 19-24. We will consider these arguments *seriatim*.

Preliminarily, we observe that the record is unclear as to whether Ms. Chavannes is indeed deceased and, if she is, whether First American knew that when it filed the *praecipes* for a writ of revival. In Appellant's petition to strike, he claimed that Ms. Chavannes's death certificate is a public record and cited the attached Exhibit 2 in support of his claim that the writ was filed in bad faith because First American knew Ms. Chavannes had died. Petition to Strike, 9/22/20, at 2. Instead of attaching a death certificate, Exhibit 2 is an affidavit from First American's legal counsel, Paige Bellino, Esquire, in opposition to Appellant's motion for leave to appeal to the Court of Appeals of New York. Therein, Attorney Bellino stated that on November 13, 2019, Appellant informed First American that Ms. Chavannes had died. She further

stated that in a subsequent phone conversation, Appellant claimed Ms. Chavannes had a will, that he was the executor and sole beneficiary, and that he would be sending a notice of probate. Attorney Bellino stated that her office requested a death certificate and obituary to confirm Ms. Chavannes's death because they could not confirm her death on their own. Petition to Strike, 9/22/20, at Exhibit 2 (Attorney Bellino Affidavit, 11/26/19). Despite these requests, First American claimed in its answer to Appellant's petition to strike that it never received confirmation of Ms. Chavannes's death or a notice of probate. Answer, 12/4/20, at 4-5. Having received neither, First American "took steps to enforce the New York [j]udgment by filing" the *praceipe* for a writ of revival. **Id**. at 5.

Based on the foregoing, First American was certainly on notice when it filed the writ of Appellant's claim that Ms. Chavannes had died. However, First American was not satisfied with verbal notice and requested proof of death. Appellant failed to provide proof of death or notice of probate, and thus First American lacked any proof that Ms. Chavannes had died. **See** First American's brief at 6 (explaining at the time it filed the *praecipes*, "no estate [had] been raised for Ms. Chavannes and no proof [had] been provided or located to substantiate that she had passed away"). Notably, the certified record also lacks any proof of Ms. Chavannes's death. Thus, what First American did know at the time it filed the *praecipes* was that the stays and holds had been lifted

and Appellant claimed without proof that Ms. Chavannes had died. Under these circumstances, we will not fault First American with acting in bad faith.

Even if the certified record confirmed Ms. Chavannes's death and First American's knowledge of her death at the time it filed the *praecipes* for a writ of revival, that filing would not have been a new action filed against a deceased person. As noted, the initial judgment lien was issued in 2013, while Ms. Chavannes was unquestionably alive. The writ of revival, filed after her purported death, merely preserved the already-existing rights and priorities of the creditor. **See Shearer**, **supra** at 861. Therefore, even if the record confirmed Ms. Chavannes's death and First American's knowledge of her death at the time it filed the *praecipes*, that would not deprive the court of jurisdiction.

We next turn to the timing of the *praecipes*. Even assuming they were filed after the five-year period, that solely affects the priority of the lien. **See id**. at 860 n.1. Appellant does not challenge the priority of First American's lien and we do not take up that issue *sua sponte*. Thus, the court had jurisdiction to consider revival of the lien despite any time lapse between the initial lien and its revival.

Lastly, we consider Appellant's argument that the trial court lacked subject matter jurisdiction over the writ because Ms. Chavannes was an indispensable party who could not be joined because she was deceased. In support, Appellant cites Rule 3026.1, which provides as follows:

(a) Except as provided by subdivision (b), if there is a judgment against two or more joint defendants, no revival of the lien of the judgment shall be effective against any of such defendants unless all joint defendants are made parties to the revival proceedings.

(b) If all or fewer than all joint defendants agree to be bound, the revival shall be effective against all of the defendants so agreeing.

> *Note:* This rule does not apply where defendants are jointly and severally liable or severally liable only.

Pa.R.C.P. 3026.1. Regardless of the record being unclear as to whether Ms. Chavannes is in fact deceased, we find this argument specious as the rule explicitly does not apply to defendants who are jointly and severally liable like Appellant and Ms. Chavannes. Accordingly, Appellant has not established that the trial court lacked jurisdiction to consider First American's *praecipes* for a writ of revival.

Appellant next argues that the writ should have been stricken for improper service. Appellant's brief at 24. According to Appellant, he received a defective writ from First American on September 17, 2020, which he claims did not have the official seal of the court and was not signed by the prothonotary. Appellant's brief at 25-26. Thereafter, the prothonotary issued a writ to the attorney of record for Appellant and Ms. Chavannes. However, Appellant contends he did not receive this because his attorney retired in 2019. *Id*. at 26-27.

On the other hand, First American maintains that it submitted the *praecipes* electronically and served a copy of the filed, stamped *praecipes* upon Appellant and Ms. Chavannes by certified and regular mail. First

American detailed several subsequent hiccups regarding service of the writ and petition to strike, but argues that "none of the circumstances prejudiced" Appellant as "[t]here is no question that the spirit of [the s]tatute was satisfied and [Appellant's] receipt of the file stamped [*p*]*raecipes* placed him on notice sufficient to enable him to object/defend against the [*p*]*raecipes* by filing the [p]etition." First American's brief at 19. Finally, First American insists that if there had been justification to grant Appellant's petition to strike based upon improper service, the lower court would have done so without prejudice to perfect service. *Id*. at 20.

In its Rule 1925(a) opinion, the trial court noted that Appellant clearly had notice of the writ as he filed a petition to strike and was therefore not prejudiced by any alleged service error. Trial Court Opinion, 7/1/21, at 7. Insofar as Appellant argued in his concise statement that the trial court erred in allowing service by the prothonotary on Appellant's retired counsel, the court labeled this claim as "frippery" since it was Appellant and Ms. Chavannes who "permitted the service because they never informed the [p]rothonotary that their attorney had retired, and papers had to be served on them." *Id*.

We first examine the prothonotary's service. The certified record includes a note from the prothonotary that the writ was issued to Appellant's attorney on August 20, 2020. Writ Issued to Attorney, 8/20/20. Rule 236 provides in relevant part as follows:

> (a) The prothonotary shall immediately give written notice of the entry of

(1) a judgment entered by confession to the defendant by ordinary mail together with a copy of all documents filed with the prothonotary in support of the confession of judgment. The plaintiff shall provide the prothonotary with the required notice and documents for mailing and a properly stamped and addressed envelope; and

(2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

Pa.R.C.P. 236(a). Appellant does not dispute that his now-retired attorney remained the attorney of record at the time the writ was issued. Thus, we conclude that the prothonotary properly issued the writ to the attorney of record in compliance with Rule 236(a)(2).

Turning to the service of the writ by First American, we observe that such is governed by Rule 3028, which provides as follows:

(a) The writ shall be served within ninety days after its issuance by the sheriff by handing a copy in the manner provided by Rule 402 or by mailing a copy in the manner provided by Rule 403.

(b) If service cannot be made as provided by subdivision (a), then service may be made

(1) in the manner prescribed by order of court pursuant to Rule 430(a), or

(2) by publication in the manner prescribed by Rule 430(b) upon the filing of an affidavit showing reasonable efforts to make service pursuant to subdivision (a) and the reasons why such service could not be made.

Pa.R.C.P. 3028. First American served the writ pursuant to Rule 403, which provides as follows:

- 12 -

> If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon delivery of the mail.
>
>> (1) If the mail is returned with notation by the postal authorities that the defendant refused to accept the mail, the plaintiff shall have the right of service by mailing a copy to the defendant at the same address by ordinary mail with the return address of the sender appearing thereon. Service by ordinary mail is complete if the mail is not returned to the sender within fifteen days after mailing.
>>
>> (2) If the mail is returned with notation by the postal authorities that it was unclaimed, the plaintiff shall make service by another means pursuant to these rules.

Pa.R.C.P. 403.

According to First American, the writ it sent via "certified mail was returned unclaimed, but the regular mail was not returned, and [Appellant] has admitted to receiving same." First American's brief at 18 (citing, *inter alia*,[3] Appellant's Petition to Strike, 9/22/20, at 1 ("Plaintiff served Defendant with the *praecipe* for writ of revival however defendant did not receive the [writ i]ssued.")).

_____

[3] First American also cites portions of its own reproduced record, which included notices of the certified mail being returned unclaimed. Appellant filed a motion to strike these documents as they are not part of the certified record. We denied Appellant's motion without prejudice to seek relief once this appeal was assigned to the merits panel. Appellant has not re-raised the issue. Regardless, for the reasons discussed *infra*, our review is not dependent on the certified mail documents contained in First American's reproduced record.

- 13 -

In *McCreesh v. City of Philadelphia*, 888 A.2d 664 (Pa. 2005), our Supreme Court adopted the more flexible approach advocated in *Leidich v. Franklin*, 575 A.2d 914 (Pa.Super. 1990), "excusing plaintiffs' initial procedurally defective service where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced" because such an approach "sufficiently protects defendants from defending against stale claims without the draconian action of dismissing claims based on technical failings that do not prejudice the defendant." *McCreesh*, *supra* at 666.

In light of our High Court's holding in *McCreesh*, we need not determine whether First American properly served Appellant pursuant to Rule 403. Rather, our review of the certified record confirms that Appellant had actual notice of the writ and was not prejudiced. Specifically, Appellant filed a petition to strike the writ, which the trial court considered. Accordingly, we conclude that the trial court did not err in finding that any procedural defects arising from the service of the writ did not warrant striking.

Finally, Appellant argues that the New York judgment is not entitled to full faith and credit in Pennsylvania. Appellant's brief at 29-36. Appellant challenges the validity of summary judgment granted by the New York court because he claims that discovery had not been completed and the matter had

not been properly restored as to Appellant and Ms. Chavannes.[4] *Id*. at 29-34.

> We begin with the following background:
>
> The United States Constitution requires that Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. Congress codified the full faith and credit clause by enacting the Full Faith and Credit Act, which provides that judgments shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
>
> As explained by the United States Supreme Court,
>
> > the very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.
>
> ***Milwaukee Cnty. v. M.E. White Co.***, 296 U.S. 268, 276–77 (1935). Thus, the Full Faith and Credit Act mandates that all courts treat a state court judgment with the same respect that it would receive in the courts of the rendering state.

---

[4] In support, Appellant cites 42 P.S. § 22004, which provides grounds for nonrecognition of a foreign judgment within the Uniform Foreign Money Judgment Recognition Act. *See* Appellant's Brief at 29. Within this Act, a "foreign judgment" is one originating from "[a]ny governmental unit other than the United States, or any state, district, Commonwealth, territory or insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands or the Ryukyu Islands." 42 P.S. § 22002. As the judgment herein is from our sister-state of New York, not a foreign governmental unit, this statute does not apply.

> Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (*res judicata*) purposes, in other words, the judgment of the rendering State gains nationwide force.
>
> We are aware of no considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to a money judgment outside the state of its rendition.

Therefore, Pennsylvania gives a judgment the same *res judicata* effect the judgment would have been afforded in the state in which it was rendered. . . .

Full faith and credit is statutorily enshrined in Pennsylvania's Enforcement Act[.]

. . . .

Generally, Pennsylvania enforces a valid sister-state judgment transferred to Pennsylvania even if the judgment violates Pennsylvania public policy.

***Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.***, 99 A.3d 936, 940–42 (Pa.Super. 2014) (cleaned up).

In its Rule 1925(a) opinion, the trial court found that the judgment was entitled to full faith and credit as Appellant has "litigated this same issue before the New York trial and appellate courts and the judgment has been affirmed" and "has been docketed in Berks County for more than seven years, so it has already been recognized by the court prior to this proceeding." Trial Court Opinion, 7/1/21, at 9. First American argues that this claim is

essentially an attempt to overturn the New York judgment. ***See*** First American's brief at 28-29.

We agree with the trial court and First American that this claim is a collateral attack on the underlying judgment. As noted, the judgment was entered and domesticated in 2013, affirmed in 2019, and the motions for leave to appeal that affirmance were dismissed in 2020. The time for challenging the underlying judgment has passed. First American's *praecipes* for a writ of revival concerned revival of the judgment; it did not concomitantly revive Appellant's right to challenge the judgment. As the judgment is clearly entitled to full faith and credit in this Commonwealth, we conclude that this claim is meritless.

Based on the foregoing, we affirm the trial court's order denying Appellant's petition to strike.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2022